DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 4th Floor
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

BLAKE J. STEINBERG (*pro hac vice* pending)
blake.steinberg@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendant JRSK, INC., d/b/a AWAY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KATIE KLAUS and TAYLOR SURH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>JRSK, INC., d/b/a AWAY,<br><br>Defendant. | Case No. 3:25-cv-10385-JSC<br><br>**DEFENDANT JRSK, INC., d/b/a AWAY'S MOTION TO COMPEL ARBITRATION**<br><br>Date: May 28, 2026<br>Time: 10:00 a.m.<br>Dept.: Courtroom 8 – 19th Floor<br>Judge: Honorable Jacqueline Scott Corley |

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

**PLEASE TAKE NOTICE THAT** on May 28, 2026, or as soon thereafter as this matter may be heard before the Honorable Jacqueline Scott Corley in the Phillip Burton Federal Building, 450 Golden Gate Avenue, San Francisco, California 94102 in Courtroom 8—19th floor. Defendant JRSK, Inc. d/b/a Away ("Away"), hereby moves this Court for an order compelling Plaintiffs Katie Klaus and Taylor Surh ("Plaintiffs") to arbitrate their claims and staying this action pending the conclusion of arbitral proceedings pursuant to 9 U.S.C. § 3, on the ground that the Federal Arbitration Act, 9 U.S.C. § 4, requires Plaintiffs to pursue their claims in accordance with the arbitration agreement contained on Away's Terms of Use.

Away's motion is based on this notice of motion and motion, the supporting memorandum of points and authorities, the Declaration of Daniel Pardes, and Exhibits A through L attached thereto, and all other pleadings and papers filed herein, and such argument and evidence as may be presented to the Court.

**RELIEF SOUGHT**

Away seeks an order (i) compelling Plaintiffs to arbitrate their claims on an individual basis, and (ii) staying the case pending resolution of Plaintiffs' claims in arbitration.

Dated: March 20, 2026

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By: */s/ David R. Singh*
DAVID R. SINGH

## TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................................1

II. FACTUAL BACKGROUND ....................................................................................1

A. Plaintiff Klaus ....................................................................................................1

B. Plaintiff Surh ....................................................................................................6

III. ARGUMENT ....................................................................................................8

A. Plaintiffs Manifested Assent to Conspicuously Presented Terms ...........................9

1. The Terms Contained a Valid and Enforceable Arbitration Agreement ...12

2. The Arbitration Provision Encompasses the Dispute at Issue ..................13

B. Plaintiffs Should Be Compelled to Arbitrate on an Individual Basis, and Their Class Claims Should be Dismissed Because They Agreed to a Class Action Waiver ....................................................................................................14

C. The Case Should be Stayed Pending Arbitration.................................................16

IV. CONCLUSION ....................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aanderud v. Superior Court*,
13 Cal. App. 5th 880 (2017) ....13

*Aguiar v. Experian Info. Sols., Inc.*,
No. 2:24-cv-02403-TLN-CSK, 2025 WL 1531433 (E.D. Cal. May 29, 2025) (Nunley, J.)....13

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....15

*Barrows v. Brinker Rest. Corp.*,
36 F.4th 45 (2d Cir. 2022) ....2

*Brown v. Wells Fargo Bank, N.A.*,
168 Cal. App. 4th 938 (2008) ....13

*Browne v. Wells Fargo Bank, Nat'l Ass'n*,
No. 2:24-cv-02359-TLN-CKD, 2025 WL 2307936 (E.D. Cal. Aug. 11, 2025) (Nunley, J.)....13

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ....14

*Cordas v. Uber Techs., Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017)....11

*Cordero v. Coinbase, Inc.*,
No. 3:25-cv-04024-CRB, 2025 WL 2223495 (N.D. Cal. Aug. 5, 2025)....16

*Dean Witter Reynolds Inc. v. Byrd*,
470 U.S. 213 (1985)....9

*Dohrmann v. Intuit, Inc.*,
823 Fed. Appx. 482 (9th Cir. 2020)....9, 10

*Driskill v. Experian Information Solutions, Inc.*,
753 F. Supp. 3d 839 (N.D. Cal.) ....10

*Fli-Lo Falcon, LLC v. Amazon.com Inc.*,
97 F.4th 1190 (9th Cir. 2024) ....13

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) ....10, 11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) .......... 13

*Herrera v. Cathay Pac. Airways Ltd.*,
104 F.4th 702 (9th Cir. 2024) .......... 2

*Houtchens v. Google LLC*,
649 F. Supp. 3d 933 (N.D. Cal. 2023) .......... 11

*Jeong v. Nexo Cap. Inc.*,
Case No. 21-cv-02392-BLF, 2022 WL 3590329 (N.D. Cal. Aug. 22, 2022) .......... 15

*Johnson v. Charter Commc'ns, Inc.*,
No. 21-CV-06135-HSG, 2022 WL 2673091 (N.D. Cal. June 2, 2022) .......... 9

*In re Juul Labs, Inc., Antitrust Litig.*,
555 F. Supp. 3d 932 (N.D. Cal. 2021) .......... 14, 16

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) .......... 11

*Kroskey v. Elevate Labs, LLC*,
No. 5:24-CV-08113-EJD, 2025 WL 1507091 (N.D. Cal. May 27, 2025) .......... 11

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019) .......... 8, 9

*Laver v. Credit Suisse Sec. (USA), LLC*,
976 F.3d 841 (9th Cir. 2020) .......... 14

*Meyer v. T-Mobile USA Inc.*,
836 F. Supp. 2d 994 (N.D. Cal. 2011) .......... 16

*Minor v. Favorite World, LLC*,
No. CV 24-4425-JFW(AJRX), 2024 WL 4834951 (C.D. Cal. Sept. 17, 2024) .......... 12

*Mohamed v. Uber Technologies, Inc.*,
848 F.3d 1201 (9th Cir. 2016) .......... 9

*Murphy v. Confirm ID, Inc.*,
No. 2:24-cv-00527, 2025 WL 603598 (E.D. Cal. Feb. 25, 2025) .......... 12

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 10

*Optimum Prods. v. HBO*,
839 F. App'x 75 (9th Cir. 2020) .......... 14

*Ortega v. UnitedHealth Grp., Inc.*,
Case No. 23-cv-05596-JST, 2024 WL 4495817 (N.D. Cal. Oct. 15, 2024) .......... 15

*Pizarro v. QuinStreet, Inc.*,
2022 WL 3357838 (N.D. Cal. Aug. 15, 2022) ....................10

*Rent-a-Cntr., W., Inc. v. Jackson*,
561 U.S. 63 (2010)....................13

*Rubio v. Marriott Resorts Hosp. Corp.*,
No. 8:23-cv00773-FWS-ADS, 2023 WL 8153535 (C.D. Cal. Oct. 17, 2023)....................16

*Sadlock v. Walt Disney Co.*,
Case No. 22-cv-09155-EMC, 2023 WL 4869245 (N.D. Cal. Jul. 31, 2023)....................12

*Sanchez v. Valencia Holding Co.*,
61 Cal. 4th 899 (2015) ....................15

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ....................9

*Smith v. Spizzirri*,
601 U.S. 472 (2024)....................16

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*,
489 U.S. 468 (1989)....................9

*Walters v. Luxottica of Am. Inc.*,
Case No. 8:23-cv-01099-FWS-MAA, 2024 WL 661195 (C.D. Cal. Jan. 5, 2024)....................15

*Woody v. Coinbase Glob., Inc.*,
No. 23-3584, 2024 WL 4532909 (9th Cir. Oct. 21, 2024) ....................16

*World Wide Foods Inc.* v. *First-Citizens Bank & Tr. Co.*,
Case No. 2:25-cv-04794-HDV-E, 2025 WL 2684294 (C.D. Cal. Aug. 20, 2025)....................12

**Statutes**

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ....................1, 8, 16

## I. INTRODUCTION

Plaintiffs Katie Klaus and Taylor Surh ("Plaintiffs") bring a class action based on the alleged disclosure of information about their activity on Defendant JRSK d/b/a Away ("Away")'s website, but their case does not belong in this Court. Prior to purchasing a suitcase on June 11, 2025, Plaintiff Klaus agreed to Away's Terms of Use (the "Terms"), which contain a mandatory arbitration clause and class action waiver. She agreed to the Terms in June when she provided her email address in exchange for receiving a product discount code, which she used when purchasing her suitcase. Plaintiff Klaus encountered clear language informing her that she was agreeing to the Terms, and thus unambiguously agreed to arbitrate her claim on an individual basis when making her purchase. After purchasing the suitcase, Plaintiff Klaus also received an email regarding an update to the Terms on September 12, 2025, which she opened. Plaintiff Surh likewise agreed to the Terms, which contained the arbitration clause and class action waiver, when he purchased a suitcase on November 29, 2024. Plaintiff Surh too agreed to the Terms when he verified his status as a veteran through an identity verification website that offers exclusive discounts for military and other service personnel on various products prior to making his purchase on the Away Website. Plaintiff Surh, like Plaintiff Klaus, also received the email regarding the update to the Terms on September 12, 2025.

Both versions of the Terms to which Plaintiffs agreed contain an arbitration clause which applies broadly to claims "arising out of or relating to" their use of Away's online store. Both versions of the Terms also contain class action waiver provisions, preventing Plaintiffs from bringing class claims or participating in class actions. For these reasons, Away moves to compel arbitration of Plaintiffs' claims, to dismiss or strike their class claims, and to stay their claims pending completion of arbitration proceedings.

## II. FACTUAL BACKGROUND

### A. Plaintiff Klaus

On June 11, 2025, Plaintiff Klaus agreed to be bound by the then-effective Terms (the "Prior Terms") prior to purchasing a suitcase, in exchange for receiving a product discount code. Pardes Decl. ¶ 4, Ex. A (Plaintiff Klaus Interaction & Purchase History).[1] While browsing the Away website, Plaintiff

[1] The Court may consider the declaration and exhibits Away has submitted in resolving the motion to

Klaus added a "Kids Carry-On" suitcase to her cart. *See id.*

After adding the suitcase to her cart, the Away website presented a pop-up that prompted Plaintiff Klaus to enter her email address to receive a discount code. Pardes Decl. ¶ 5. This pop-up stated, "Get 10% off your first order[,]" and "Sign up for our emails and texts to get 10% off, plus be the first to know about our latest launches, special events, and more." *Id.*, Ex. B (Email Discount Pop-Up). Beneath this language, Plaintiff Klaus entered her email address into a form field that appeared immediately above the following message: "By clicking submit, you agree to our Privacy Policy and Terms." Pardes Decl. ¶ 6, Ex. B (Email Discount Pop-Up). The words "Privacy Policy" and "Terms" were underlined hyperlinks, distinguished from the surrounding text, and clicking on them led to the Privacy Policy and Prior Terms, which she could easily scroll through and read. Pardes Decl. ¶ 6. A screenshot illustrating how this pop-up appeared to Plaintiff Klaus is shown below (*see id.* Ex. B):




---

compel arbitration. *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702 (9th Cir. 2024) ("In reviewing motions to compel arbitration ... a court must 'consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits.") (quoting *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022)).

The Prior Terms contained a mandatory arbitration clause and class action waiver, providing that:

> [Y]ou and we will resolve any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Products, Services or Content (collectively, "Disputes") exclusively and finally by binding, individual arbitration and not in a class, representative or consolidated action or proceeding.

Pardes Decl. ¶ 6, Ex. D at 12 (Away Terms of Use (eff. Nov. 27, 2020) (hereafter, "Prior Terms"). The arbitration clause in the Prior Terms also contained a delegation clause, which provided that "the arbitrator shall have exclusive authority to decide all issues relating to the interpretation, applicability, enforceability and scope of this arbitration agreement[,]" Ex. D at 14, and further provided that:

> We may update the Terms at any time, in our sole discretion. If we do so, we'll post the updated Terms on the Site and indicate at the top of this page the date these Terms were last revised. Any changes to the Terms will be in effect as of the 'Last Updated Date' referenced on the Site. We will notify you of any material changes either through a pop-up notice, e-mail or through other reasonable communications. Your continued use of the Services after the 'Last Updated Date,' constitutes your acceptance of the updated Terms.

Pardes Decl. ¶ 11, Ex. D at 1-2 (Prior Terms). After entering her email address into the form field, Plaintiff Klaus confirmed she agreed to the Privacy Policy and Terms by clicking the "SUBMIT" button. Pardes Decl. ¶ 8, Ex. A, B (Email Discount Pop-Up).

The website then presented another screen that prompted Plaintiff Klaus to enter her phone number to obtain the discount code. Pardes Decl. ¶ 9, Ex. C (Cell Phone Discount Pop-Up). This screen stated "Sign up for texts to unlock 10% off[,]" and again provided Plaintiff Klaus notice of the "Privacy Policy & Terms." Pardes Decl. ¶ 9, Ex. C. Notably, the words "Privacy Policy" and "Terms" were underlined hyperlinks, distinguished from the surrounding text, and clicking on them led to the Privacy Policy and Prior Terms, which Plaintiff Klaus could easily scroll through and read. Pardes Decl. ¶ 9, Ex. C. After entering her phone number, Plaintiff Klaus clicked "SUBMIT[.]" Pardes Decl. ¶ 12, Ex. A at 2 (Klaus Interaction & Purchase History). A screenshot illustrating how this pop-up appeared to Plaintiff Klaus is shown below (*see id.* Ex. C):




After inputting her phone number and clicking “SUBMIT,” Away sent a text message to the number she provided which stated “Reply Y to confirm your Away subscription (incl. cart reminders).” Pardes Decl. ¶ 13. Plaintiff Klaus confirmed by responding “Y” and Away subsequently provided the discount code to Plaintiff Klaus by text message, which she used when purchasing the suitcase. Pardes Decl. ¶ 13, Ex. A at 3-4 (Klaus Interaction & Purchase History).

Following Plaintiff Klaus’ purchase, Away sent an email notifying all individuals signed up to receive marketing emails from Away of an update to Away’s Terms and Privacy Policy on September 12, 2025. Pardes Decl. ¶ 14, Ex. F (Email Regarding Update to Away’s Terms). The email let recipients know that Away was “updating [its] Terms and Privacy Policy[,]” and clearly stated “[w]e made some updates to our Terms, including clarifying our informal and formal dispute resolution process, what goes to arbitration, how certain claims are organized and what your rights are with respect to each. These will apply to you unless you opt out in accordance with the Terms.” *Id.* The email also asked recipients to “[p]lease take a moment to review our revised Privacy Policy and Terms.” *Id.* The phrases “Privacy Policy” and “Terms” were underlined hyperlinks, distinguished from the surrounding text, and clicking

on them led individuals to the updated Terms and Privacy Policy, which Plaintiff Klaus could easily scroll through and read. Pardes Decl. ¶ 13, Ex. F (Email Regarding Update to Away's Terms). The email further informed Plaintiff Klaus that "[b]y continuing to use our websites, apps or any of our services, including your account, you are agreeing to the updated Terms of Use[.]" *Id.* Away's records reflect that Plaintiff Klaus opened this email. Pardes Decl. ¶ 16, Ex. A at 5 (Plaintiff Klaus Interaction & Purchase History). A screenshot of this email appears below (*see id.* Ex. F):

AWAY

Hi there,

We wanted to let you know that we're updating our Terms and Privacy Policy. This is a legal notice, which is why you're receiving it even if you've opted out of marketing communications.

Here are the main changes:

- We made some updates to our Terms, including clarifying our informal and formal dispute resolution process, what goes to arbitration, how certain claims are organized and what your rights are with respect to each. These will apply to you unless you opt out in accordance with the Terms.
- We updated our Privacy Policy to make it clearer and easier to read, including with respect to what data we collect and what it's used for.

Please take a moment to review our revised Privacy Policy and Terms. The new versions will go into effect on September 12, 2025. By continuing to use our websites, apps or any of our services, including your account, you are agreeing to the updated Terms of Use, and acknowledging the Privacy Policy. Please reach out to privacy@awaytravel.com if you have any questions.

Travel well,

Away

Plaintiff is thus bound by the current version of the Terms (the "Current Terms"), which include an arbitration clause and a class action waiver, providing:

> [Y]ou and we agree that any dispute, claim or controversy between us, including but not limited to disputes, claims or controversies arising out

> of or relating to these Terms and this Arbitration Agreement (including the formation, breach, termination, enforcement, interpretation, scope, applicability or validity thereof), the Products, the Services, or the Content (collectively, "Disputes"), whether such Dispute arose before, on, or subsequent to you entering these Terms, shall be exclusively and finally resolved by binding, individual arbitration in accordance with this Arbitration Agreement, and not in a class, representative or consolidated action or proceeding.

Pardes Decl. ¶ 15, Ex. G at 11 (Away Terms of Use (eff. Sept. 12, 2025)) (hereafter, "Current Terms"). In addition, under the Current Terms, "[t]o the extent allowed by law, the arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any Disputes relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including any Dispute that all or any part of this Arbitration Agreement is void or voidable, and further, that the arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether these Terms are unconscionable or illusory[.]" Pardes Decl. Ex. G § 15 (Current Terms).

The Current Terms provide that individuals may opt out of arbitration by providing a written notice to Away by email "within thirty (30) days following the date you first agree to these Terms" that includes "your full legal name, your complete mailing and email address and phone number, a clear statement that you wish to opt out of this Arbitration Agreement, and your signature." Pardes Decl. Ex. G § 15 (Current Terms). The Current Terms further provide that "[i]f your Opt-Out Period has passed, you are not eligible to opt out of this Arbitration Agreement, and you will be bound to the terms and conditions of this Arbitration Agreement." Pardes Decl. Ex. G § 15 (Current Terms). Plaintiff Klaus, however, did not opt out of arbitration as set forth in this provision. Pardes Decl. ¶ 17.

**B. Plaintiff Surh**

Plaintiff Surh likewise agreed to the Terms containing the arbitration clause and class action waiver when he purchased a suitcase on November 29, 2024. Plaintiff Surh made his purchase on the Away website after logging into an identity verification site that offers exclusive discounts for military and other service personnel. Pardes Decl. ¶ 18. On this identity verification site, id.me, Plaintiff Surh had to verify his status as a veteran. *Id.* ¶ 19. In that verification process, Plaintiff Surh authorized the id.me website to share his "verified identity information" with Away, and encountered a pop-up which

informed him that "[b]y allowing access you are agreeing to [the Away] Terms of Service and Privacy Policy." *Id.* ¶ 19-20, Ex. J (id.me Pop-Up). The phrase "Terms of Service" was an underlined hyperlink that appeared in a different color, distinguishing it from the surrounding text, and clicking on it led to Away's Prior Terms, which Plaintiff Surh could easily scroll through and read. *Id.* ¶ 20. Plaintiff Surh confirmed his agreement to Away's Prior Terms by clicking the "Allow" button on this pop-up. *Id.* ¶ 21. A screenshot illustrating how this pop-up appeared to Plaintiff Surh appears below (*see id.* Ex. J):




After verifying his identity on the id.me website, Plaintiff Surh returned to the Away Website. Once there, Plaintiff Surh was again made aware of the Terms and Privacy Policy via another a pop up providing Plaintiff Surh with the option to sign up for text messages. Pardes Decl. ¶ 22. After entering his phone number, Plaintiff Surh clicked "SUBMIT[.]" Pardes Decl. ¶ 22, Ex. L. This pop-up too included a hyperlinked notice of Away's "Terms & Privacy Policy" that Plaintiff Surh could have easily scrolled through and read. Accordingly, Plaintiff Surh agreed to the relevant Terms and Privacy Policy, which was reinforced with further notice of the relevant Terms and Privacy Policy when he returned to

the Away Website. A screenshot illustrating how this pop-up prompting Plaintiff Surh to enter his phone number appeared is shown below. *See id*. Ex. L.




Like Plaintiff Klaus, Plaintiff Surh also received the email regarding the update to the Terms on September 12, 2025, and continued receiving and opening further emails from Away, including on December 3. *Id.* ¶ 24, Ex. I (Plaintiff Surh Purchase & Interaction History). Like Plaintiff Klaus, Plaintiff Surh also did not opt out of arbitration as set forth in the Current Terms. *Id.* ¶ 25.

Notwithstanding their agreement to bring any claims against Away in arbitration, Plaintiffs initiated this putative class action without attempting to arbitrate their claims. Away therefore moves to compel arbitration of Plaintiffs' claims.

## III. ARGUMENT

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* applies to the arbitration agreements at issue here, and "requires courts to enforce covered arbitration agreements according to their terms." *Lamps*

*Plus, Inc. v. Varela*, 587 U.S. 176, 178 (2019); *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999). "Federal policy is 'simply to ensure the enforceability, according to their terms, of private agreements to arbitrate.'" *Johnson v. Charter Commc'ns, Inc.*, No. 21-CV-06135-HSG, 2022 WL 2673091, at *2 (N.D. Cal. June 2, 2022) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989)). Courts must resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Id.* "When considering a motion to compel arbitration, the Court is limited to determining (1) whether a valid arbitration agreement exists, and if so, (2) whether the arbitration agreement encompasses the dispute at issue." *Id.* Under Ninth Circuit precedent, a valid arbitration agreement exists where "'a reasonably prudent Internet consumer' would be put on 'inquiry notice' of the 'agreement's existence and contents.'" *Dohrmann v. Intuit, Inc.*, 823 Fed. Appx. 482, 483 (9th Cir. 2020). This standard is satisfied where plaintiffs "affirmatively acknowledge" conspicuous terms of use that contain an arbitration clause. *See id.* at 484. Therefore, Plaintiffs' manifestation of assent to the Terms and the arbitration clause therein constitutes a valid and binding agreement. *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) (compelling arbitration and explaining, "[b]oth substantive and procedural unconscionability must be present in order for a court to find a contract unconscionable"). Here, Plaintiffs' claims belong in arbitration because they assented to Away's Terms and arbitration clause.

### A. Plaintiffs Manifested Assent to Conspicuously Presented Terms

Prior to purchasing her suitcase, Plaintiff Klaus assented to the Prior Terms when entering her email address to receive a product discount code. Pardes Decl. ¶¶ 6-7, Ex. A at 1-2 (Klaus Interaction & Purchase History). As set forth above, the website informed Plaintiff Klaus that by providing her email address and clicking submit, she was agreeing to Away's Terms. Pardes Decl. ¶¶ 6-7, Ex. A at 1-2 (Klaus Interaction & Purchase History). The website provided a hyperlink to the Terms on the screens in which she input her email address to receive the discount code, which she could easily scroll through and read. *Id.* Plaintiff Surh similarly encountered language confirming he was agreeing to the hyperlinked Terms when he allowed the id.me website to share his verified identity information with Away. Pardes Decl. ¶¶ 19-21, Ex. J (id.me Pop-Up).

Under Ninth Circuit precedent and decisions from courts in this District, these messages—with their easily readable text, position immediately next to the buttons by which Plaintiffs confirmed their agreement, and conspicuous hyperlinks to the Prior Terms and Privacy Policy—provided Plaintiffs with reasonably conspicuous notice that they were consenting to Away's Prior Terms and Privacy Policy. *See Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 929 (N.D. Cal. 2024) (granting motion to compel arbitration and holding, "[t]he bolded text 'denot[es] the existence of a hyperlink.' The location of the link directly below the 'Sign Up' button also draws attention to the notice") (citations omitted); *Pizarro v. QuinStreet, Inc.*, 2022 WL 3357838, 22-cv-02803, *3 (N.D. Cal. Aug. 15, 2022) (granting motion to compel arbitration and holding Plaintiff was given conspicuous notice of the terms, explaining "[i]n particular, the notice and hyperlink appear directly below the 'See My Rates' button, are set off by ample white spacing, and are primarily surrounded by text no larger than the notice itself. Further, the general design of the webpage, which is comprised of only two data fields, is relatively uncluttered and has a muted, and essentially uniform, color scheme"); *Dohrmann*, 823 Fed. Appx. at 484-85 (reversing and remanding denial of motion to compel arbitration and holding terms were conspicuously disclosed where "a user accessing a TurboTax account, after entering a user ID and password, was required to click a 'Sign In' button, directly under which the following language appeared: '*By clicking Sign In, you agree to the Turbo Terms of Use, TurboTax Terms of Use, and have read and acknowledged our Privacy Statement*'"); *Driskill v. Experian Information Solutions, Inc.*, 753 F. Supp. 3d 839, 843–45 (N.D. Cal.) (similar).

Plaintiff Klaus confirmed her agreement to the Prior Terms by clicking the "SUBMIT" button after entering her email address, and Plaintiff Surh similarly confirmed his agreement to the Prior Terms by clicking the "Allow" button on the id.me pop-up screen. Pardes Decl. ¶¶ 6-7, 19-21, Exs. B & C (Email Discount Pop-Up and Phone Number Discount Pop-Up); Ex. J (id.me Pop-Up). The Ninth Circuit and other California federal courts have made clear that clicking buttons similar to those here constitutes an unambiguous manifestation of assent, when accompanied with conspicuous notice. *Oberstein v. Live Nation Ent., Inc.,* 60 F.4th 505, 515–517 (9th Cir. 2023) (users manifested unambiguous consent when, "to place an order, a user [had to] click on the 'Place Order' button, directly above which [was] language stating: 'By continuing past this page and clicking 'Place Order', you agree

to our Terms of Use.'"); *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (reversing denial of motion to compel arbitration where "users [were] required to advance through a sign-in screen which states 'By tapping 'Play,' I agree to the Terms of Service.'"); *Kroskey v. Elevate Labs, LLC*, No. 5:24-CV-08113-EJD, 2025 WL 1507091, at *4 (N.D. Cal. May 27, 2025) (holding "[h]ere, there is no dispute that Plaintiff manifested assent. The notice stated that '[b]y creating your account, you agree to Balance's Terms & Conditions and Privacy Policy,' and Plaintiff proceeded to create an account"); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 990 (N.D. Cal. 2017) (granting motion to compel arbitration where "[plaintiff] must affirmatively assent to Uber's terms and conditions by clicking 'DONE' to complete his sign-up process on a page clearly displaying the notice: 'By creating an Uber account, you agree to the Terms & Conditions and Privacy Policy.'").[2]

The Prior Terms to which Plaintiffs both agreed contained an arbitration clause, so regardless of the version of the Terms that applies here, Plaintiffs' claims belong in arbitration. Pardes Decl. Ex. D at 12 (Prior Terms). However, the Prior Terms also provided that Away may update its Terms "at any time, in our sole discretion[,]" that "changes to the Terms will be in effect as of the 'Last Updated Date' referenced on the Site[,]" and "[y]our continued use of the Services after the 'Last Updated Date,' constitutes your acceptance of the updated Terms." Pardes Decl. ¶ 11, Ex. D at 1-2, 12 (Prior Terms). Plaintiffs both received an email on September 12, 2025, notifying them that Away had updated its Terms, "including clarifying our informal and formal dispute resolution process, what goes to arbitration, how certain claims are organized and what your rights are with respect to each." Pardes Decl. ¶¶ 14, 24, Ex. F (Email Regarding Update to Away's Terms). Defendant's records show that both Plaintiffs received this email and continued to interact with Away, with Plaintiff Klaus opening this email, and Plaintiff Surh opening further emails sent to him by Away. *Id.* ¶¶ 16, 23, Exs. A & I (Plaintiff Klaus & Plaintiff Surh Interaction & Purchase History). Plaintiffs thereby both "agree[d] to the updated Terms of Use." Pardes Decl., Ex. F (Email Regarding Update to Away's Terms); *Ghazizadeh*, 737 F. Supp. 3d at 932–33 (holding updated terms applied when plaintiff received notification over email even though defendant did not establish plaintiff viewed the email); *Sadlock v. Walt Disney Co.,* Case No. 22-cv-

[2] Whether Plaintiffs specifically remember assenting to the terms or not is irrelevant. *Houtchens v. Google LLC*, 649 F. Supp. 3d 933, 942 (N.D. Cal. 2023) (compelling arbitration where "Plaintiffs' bare assertion that they do not recall this process does not overcome [sic] overcome [sic] Google's evidence").

09155-EMC, 2023 WL 4869245, at *11–13 (N.D. Cal. Jul. 31, 2023) (holding email notice of updated terms was sufficient to bind Plaintiff to updated terms); *World Wide Foods Inc.* v. *First-Citizens Bank & Tr. Co.*, Case No. 2:25-cv-04794-HDV-E, 2025 WL 2684294, at *3 (C.D. Cal. Aug. 20, 2025) (plaintiff was provided notice and subsequently bound by updated terms noticed in an account statement). Because they received notice of the update to the Terms, continued using Away's service, and did not opt out of arbitration, Plaintiffs are bound by the Current Terms and must arbitrate their claims.[3]

**1. The Terms Contained a Valid and Enforceable Arbitration Agreement**

Plaintiffs cannot establish here that the arbitration agreement is unconscionable by bringing an action in this Court, because the Prior Terms vest New York courts with authority to determine whether disputes are arbitrable, and the Current Terms vest this authority exclusively with the arbitrator. The Prior Terms provided that "any decisions concerning arbitrability of a particular Dispute, including but not limited to whether a class arbitration is permitted by the Agreement, shall be resolved by a court having jurisdiction in New York, New York." Pardes Decl. Ex. D § 16 (Prior Terms). Under the Current Terms, "[t]o the extent allowed by law, the arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any Disputes relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including any Dispute that all or any part of this Arbitration Agreement is void or voidable, and further, that the arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether these Terms are unconscionable or illusory[.]" Pardes Decl. Ex. G § 15 (Current Terms).

Therefore, only the arbitrator may determine arbitrability of Plaintiffs' claims under the Current Terms. *See Murphy v. Confirm ID, Inc.*, No. 2:24-cv-00527, 2025 WL 603598, at *8 (E.D. Cal. Feb. 25, 2025) (finding the "delegation provision clearly and unmistakably provides that the enforceability of the arbitration agreement is a question for the arbitrator, not the Court"); *Aguiar v. Experian Info. Sols., Inc.*,

[3] While Plaintiffs do not allege—one way or the other—whether they continued to use the service, they would not have standing for their requests for injunctive relief if they no longer used the service. Compl. at 46, Prayer for Relief; *see, e.g.*, *Minor v. Favorite World, LLC*, No. CV 24-4425-JFW(AJRX), 2024 WL 4834951, at *2-3 (C.D. Cal. Sept. 17, 2024) (no standing for injunctive relief where plaintiff did not plead they intended to purchase a product in the future). In any event, regardless of whether the Current or Prior Terms applies, Plaintiffs must arbitrate their claims on an individual basis, as explained above.

No. 2:24-cv-02403-TLN-CSK, 2025 WL 1531433, at *6 (E.D. Cal. May 29, 2025) (Nunley, J.) (granting defendant's motion to compel "to decide . . . gateway issues"); *Browne v. Wells Fargo Bank, Nat'l Ass'n*, No. 2:24-cv-02359-TLN-CKD, 2025 WL 2307936, at *4 (E.D. Cal. Aug. 11, 2025) (Nunley, J.) (refusing to consider plaintiff's arguments regarding enforceability of the arbitration agreement due to the delegation clause); *Fli-Lo Falcon, LLC v. Amazon.com Inc.*, 97 F.4th 1190, 1194 (9th Cir. 2024) ("When the parties have 'clearly and unmistakably' delegated questions regarding arbitrability to the arbitrator, the court need not conduct further inquiries beyond the existence of the arbitration agreement."); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator."). Because under both versions of the Terms Plaintiffs have agreed to clear and unmistakable clauses delegating authority to resolve the arbitrability of disputes to other venues, arguments as to the enforceability of the Terms are not properly before this Court. *See Aanderud v. Superior Court*, 13 Cal. App. 5th 880, 890–92 (2017) (holding "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate" where the outcome is "clear and unmistakable") (citing *Rent-a-Cntr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)).[4]

**2. The Arbitration Provision Encompasses the Dispute at Issue**

The arbitration clause in both the Prior Terms and Current Terms applies broadly to individuals' use of Away's online store and covers "dispute[s], claim[s], or controver[sies] arising out of or relating to" the Terms. Pardes Decl. Ex. D at 1; § 16 (Prior Terms) (stating "these Terms. . . govern your use of our Site, which includes our online store for Away luggage, bags, travel accessories and other products ('Products') (collectively, with the Site, the 'Services')" and that the arbitration provision applies to "any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Products, Services or Content"); Pardes Decl. Ex. G at 1; § 15 (Current Terms) (stating "these Terms . . . govern your use of our Site, which

[4] Under California law, Plaintiffs bear the burden of showing unconscionability, whether procedural or substantive. *Brown v. Wells Fargo Bank, N.A.*, 168 Cal. App. 4th 938, 956 (2008) ("Plaintiffs, as the party opposing arbitration, had the burden of establishing that the arbitration provision was unconscionable"). Therefore, to the extent Plaintiffs argue the agreement is unconscionable, Away reserves its right to respond to any arguments raised by Plaintiff.

includes our online store for Away luggage, bags, travel accessories and other products ('Products') (collectively, with the Site, the 'Services')" and "you and we agree that any dispute, claim or controversy between us, including but not limited to disputes, claims or controversies arising out of or relating to these Terms and this Arbitration Agreement, . . . the Products, the Services, or the Content (collectively, 'Disputes'), whether such Dispute arose before, on, or subsequent to you entering these Terms, shall be exclusively and finally resolved by binding, individual arbitration in accordance with this Arbitration Agreement").

Such clauses that apply broadly to any dispute "arising out of or relating to" an agreement or service are considered "broad and far reaching." *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1131 (9th Cir. 2000); *Optimum Prods. v. HBO*, 839 F. App'x 75, 77 (9th Cir. 2020) ("Every court that has construed the phrase 'arising in connection with' in an arbitration clause has interpreted that language broadly"). Accordingly, for arbitration to be required here, Plaintiffs' "factual allegations need only 'touch matters' covered by the" agreement. *Optimum Prods*., 839 F. App'x at 77. Here, that standard is clearly met. Plaintiffs' claims relate to their purchase of suitcases from the Away website, which is covered by the arbitration provision in both the Prior and Current Terms. First Amended Class Action Complaint, ECF 19 ¶¶ 6, 9; Pardes Decl. Ex. D at 1, § 16 (Prior Terms); Pardes Decl. Ex. G at 1, § 15 (Current Terms).

In short, Plaintiffs' claims relating to their purchases fall within the scope of the valid and binding arbitration agreement at issue here, and the Court should therefore compel arbitration.

### B. Plaintiffs Should Be Compelled to Arbitrate on an Individual Basis, and Their Class Claims Should be Dismissed Because They Agreed to a Class Action Waiver

Similarly, Plaintiffs' assent to a class action waiver bars them from bringing claims on behalf of a putative class. *In re Juul Labs, Inc., Antitrust Litig.*, 555 F. Supp. 3d 932, 951-52 (N.D. Cal. 2021) (enforcing class waiver where plaintiffs affirmatively consented to Juul's terms via a clickwrap agreement); *Laver v. Credit Suisse Sec. (USA), LLC*, 976 F.3d 841, 846 (9th Cir. 2020) (affirming dismissal of class claims where valid class action waiver applied); see *also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350–52 (2011). A plaintiff's class claims are properly dismissed or stricken in light of a valid class waiver. *Laver*, 976 F.3d at 848–9.

Both the Prior Terms and Current Terms contain a class action waiver that bar Plaintiffs from

bringing class claims or participating in class actions. Specifically, the Prior Terms prevent Plaintiff from bringing claims "AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING." Pardes Decl. Ex. D § 16 (Prior Terms). The Current Terms similarly provide "[y]ou and Away agree that, to the fullest extent permitted by law, each party is waiving their respective rights to a trial by jury or to participate as a plaintiff, claimant, or class member in any class, collective, private attorney general, representative, or consolidated proceeding . . . ." Pardes Decl. Ex. G at 1, § 15 (Current Terms). Therefore, Plaintiffs cannot maintain their class claims which should be dismissed or, in the alternative, stricken.

The validity of a class action waiver is assessed in the same manner and in conjunction with any accompanying arbitration agreement, and here, the waiver is valid for the same reasons Plaintiff's agreement to arbitrate is valid: Plaintiffs were given conspicuous notice of Away's Terms and provided unambiguous consent. Pardes Decl. ¶¶ 6-7, 19-21 (detailing instances of Away obtaining Plaintiffs' assent to the Prior Terms and Current Terms); *Walters v. Luxottica of Am. Inc.*, Case No. 8:23-cv-01099-FWS-MAA, 2024 WL 661195, at *13 (C.D. Cal. Jan. 5, 2024) (holding a class waiver was valid and enforceable for the same reasons an agreement's arbitration provision was valid and enforceable); *Ortega v. UnitedHealth Grp., Inc.*, Case No. 23-cv-05596-JST, 2024 WL 4495817, at *4 (N.D. Cal. Oct. 15, 2024) (enforcing class action waiver and dismissing class claims where Plaintiffs agreed to class waiver as part of an employment agreement and explaining, "[u]nder California law, 'procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability'") (citing *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 910 (2015)); *see also Jeong v. Nexo Cap. Inc.*, Case No. 21-cv-02392-BLF, 2022 WL 3590329, at *15–16 (N.D. Cal. Aug. 22, 2022) (striking class claims in face of a valid class waiver agreement).

The class waiver, like the arbitration clause, is not procedurally or substantively unconscionable. Here, the class action waiver was conspicuously announced at the top of both the Prior Terms and Current Terms, which provided "**ARBITRATION AND CLASS ACTION WAIVER: . . . YOU WAIVE YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT**[.]" Pardes Decl. Ex. D at 1 (Prior Terms), Ex. G at 1 (Current Terms). Courts have enforced similarly conspicuous

notifications of arbitration provisions and class waivers, with bold, all caps disclaimers near the beginning of an agreement. *Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1002–03 (N.D. Cal. 2011) (compelling arbitration where "[n]either the op-out provision nor the arbitration agreement was a hidden term . . . the class action waiver is also located in the second numbered paragraph of the T & C, written in capitalized and bolded letters, and contains the heading, 'CLASS ACTION WAIVER'"); *In re Juul*, 555 F. Supp. 3d at 945 (enforcing arbitration agreement and class waiver provision and holding, "[i]n all of the versions of the Terms and Conditions, the arbitration agreement and class action waiver provisions were emphasized in a notice at the top of the page"); *Cordero v. Coinbase, Inc.*, No. 3:25-cv-04024-CRB, 2025 WL 2223495, at *6 (N.D. Cal. Aug. 5, 2025) (compelling arbitration and upholding class waiver where, "the class waiver. . . is clearly presented and labeled and is in all-caps"); *Rubio v. Marriott Resorts Hosp. Corp.*, No. 8:23-cv00773-FWS-ADS, 2023 WL 8153535, at *3 (C.D. Cal. Oct. 17, 2023) (enforcing class action waiver and dismissing class claims). Therefore, the Class Waiver within the Prior Terms and Current Terms were enforceable, procedurally conscionable, and valid. *See id*.

Since Plaintiffs agreed to a valid and enforceable class waiver, the Court should compel arbitration on an individual basis, and their class claims should either be dismissed or, in the alternative, stricken.

**C. The Case Should be Stayed Pending Arbitration**

Should the Court compel arbitration, the Court must stay the proceeding. Where the FAA applies, the Supreme Court has made the question of whether a stay should be granted pending resolution of the arbitration clear. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see also Woody v. Coinbase Glob., Inc.*, No. 23-3584, 2024 WL 4532909, at *1 (9th Cir. Oct. 21, 2024) ("when a party requests a stay in a dispute subject to arbitration, the district court has no discretion to deny it"). Here, both the Prior Terms and Current Terms plainly state that the Federal Arbitration Act ("FAA") govern their enforcement. Pardes Decl., Ex. D § 16 (Prior Terms), Ex. G § 15 (Current Terms). Therefore, should the Court grant Away's motion to compel arbitration, it should also stay the above-captioned case pending resolution of the arbitration.

## IV. CONCLUSION

Plaintiffs agreed to submit their claims to individual arbitration by assenting to Away's Terms. Accordingly, Defendant respectfully requests that this Court compel arbitration on an individual basis and dismiss Plaintiffs' class claims. Further, given that all of Plaintiffs claims are subject to arbitration, Away requests this Court stay the above-captioned proceedings pending completion of the arbitration.

Dated: March 20, 2026

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By: *<u>/s/ David R. Singh</u>*
DAVID R. SINGH

DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 4th Floor
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

BLAKE J. STEINBERG (*pro hac vice* pending)
blake.steinberg@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendant JRSK, INC., d/b/a AWAY