DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 4th Floor
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

BLAKE J. STEINBERG (*pro hac vice* pending)
blake.steinberg@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendant JRSK, INC., d/b/a AWAY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KATIE KLAUS and TAYLOR SURH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>JRSK, INC., d/b/a AWAY,<br><br>Defendant. | Case No. 3:25-cv-10385-JSC<br><br>**DEFENDANT JRSK, INC., d/b/a AWAY'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>Date: May 28, 2026<br>Time: 10:00 a.m.<br>Dept.: Courtroom 8 – 19th Floor<br>Judge: Honorable Jacqueline Scott Corley |

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO THE COURT AND ALL PARTIES OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 28, 2026 at 10:00am, or as soon thereafter as this matter may be heard before the Honorable Jacqueline Scott Corley in the Phillip Burton Federal Building, 450 Golden Gate Avenue, San Francisco, California 94102 in Courtroom 8—19th floor. Defendant JRSK, Inc. d/b/a Away ("Away"), will and hereby does move to dismiss the First Amended Class Action Complaint filed by Plaintiffs Katie Klaus and Taylor Surh ("Plaintiffs") in this action. Away's motion to dismiss is brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Away's motion is based on this notice of motion and motion, the supporting memorandum of points and authorities, the Declaration of Daniel Pardes, the Declaration of Blake J. Steinberg, and Exhibits A through N thereto, and all other pleadings and papers filed herein, and such argument and evidence as may be presented to the Court.

Dated: March 20, 2026

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By: *<u>/s/ David R. Singh</u>*
DAVID R. SINGH

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....... 1

II. BACKGROUND ....... 3

III. LEGAL STANDARD ....... 4

IV. ARGUMENT ....... 4

A. PLAINTIFFS HAVE NOT ALLEGED AN INJURY SUFFICIENT TO CONFER ARTICLE III STANDING ....... 4

1. A Loss of Control of One's Information Alone Does Not Create a Concrete Injury Post-*TransUnion* and *Popa* ....... 5

2. Plaintiffs Allege No Cognizable Intangible Harm Traditionally Recognized at Common Law ....... 6

3. Plaintiffs Have No Privacy Interest in Contentless Information ....... 7

B. PLAINTIFFS ALSO DID NOT ABIDE BY THE PRE-DISPUTE PROCESS SET FORTH IN AWAY'S TERMS ....... 8

C. PLAINTIFFS CONSENTED TO THE CHALLENGED USE AND DISCLOSURES ....... 8

D. PLAINTIFFS DO NOT PLAUSIBLY ALLEGE A CLAIM UNDER THE ECPA ....... 9

1. The Alleged "Communications" Were Contentless ....... 9

2. The Direct Party Exception Applies ....... 9

3. The Crime-Tort Exception Does Not Apply ....... 10

a. The Alleged Interception Was Not *For the Purpose of* Committing a Distinct Crime or Tort ....... 10

b. Plaintiffs Do Not Plausibly Allege a Subsequent Crime or Tort ....... 11

4. Plaintiffs Cannot Plausibly Allege a "Disclosure" in Violation of §2511(1)(c) ....... 13

E. PLAINTIFFS DO NOT PLAUSIBLY ALLEGE A VIOLATION OF CIPA § 631 ....... 13

1. Plaintiff Surh's CIPA Claims Are Barred By the Statute of Limitations ....... 13

2. The Party Exception Exempts Away from Liability Under § 631 .............14

3. Away Did Not Aid or Abet Third Parties .................................................15

4. Plaintiffs Do Not Plausibly Allege an "In Transit" Interception ...............16

5. Plaintiffs Have Not Pled Any Effort to *Read* the Hashed Information......16

6. Plaintiffs Do Not Allege the Use of a Telephone .....................................17

F. PLAINTIFFS DO NOT STATE A CLAIM UNDER CIPA § 632 .......................17

G. PLAINTIFFS DO NOT PLAUSIBLY ALLEGE A VIOLATION OF CIPA § 638.51 ..........................................................................................................19

1. Pen Registers Do Not Collect the Contents of Communications ..............19

2. The Alleged Conduct Does Not Map Onto the Operation of a Pen Register ..........................................................................................20

3. The Definition of a Pen Register Does Not Reach Downstream Misuse ..21

4. Away is an Electronic Communications Service Provider Who May Use a Pen Register or Trap and Trace Device .................................................22

H. PLAINTIFFS DO NOT STATE A CONSTITUTIONAL INVASION OF PRIVACY CLAIM ..............................................................................22

1. No Legally Protected Privacy Interest ......................................................22

2. Plaintiffs Lack a Reasonable Expectation of Privacy ...............................23

3. Plaintiffs Do Not Allege a Serious Invasion of Privacy ............................24

4. No Money Damages for Invasion of Privacy Claims ...............................25

V. CONCLUSION..............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....4

*Aviles v. LiveRamp, Inc.*,
2025 WL 487196 (Cal. Super. Ct. Jan. 28, 2025)....22

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024)....10

*Blanco v. County of Kings*,
142 F. Supp. 3d 986 (E.D. Cal. 2015)....26

*Bowe v. United States*,
146 S. Ct. 447 (2026)....20

*Brodsky v. Apple Inc.*,
2019 WL 4141936 (N.D. Cal. Aug. 30, 2019)....14

*Brosnan v. Dry Cleaning Station Inc.*,
2008 WL 2388392 (N.D. Cal. June 6, 2008)....8

*Camacho v. DG Premium Brands LLC*,
No. 24STCV21672 (Cal. Super. Ct. Apr. 17, 2025)....21, 22

*Caro v. Weintraub*,
618 F.3d 94 (2nd Cir. 2010)....12

*Casillas v. BOP LLC*,
2025 WL 2161288 (Cal. Super. Ct. June 18, 2025)....23

*Casillas v. Transitions Optical, Inc.*,
2024 WL 4873370 (Cal. Super. Ct. Sep. 9, 2024)....23

*Casillas v. Zappos*,
No. 24STCV14880 (Cal. Super. Ct. Nov. 18, 2025)....21

*Centaur Corp. v. ON Semiconductor Components Indus., LLC*,
2010 WL 444715 (S.D. Cal. Feb. 2, 2010)....8

*Chevron Corp. v. Donziger*,
2013 WL 4536808 (N.D. Cal. Aug. 22, 2013)....19

*Clausing v. S.F. Unified Sch. Dist.*,
221 Cal. App. 3d 1224 (1990)....26

*Dawidzik v. Tesla, Inc.*,
2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) ........................................................5, 6, 7

*Doe v. Eating Recovery Ctr.*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ...................................................................17

*Doe v. Kaiser Found. Health Plan*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ..........................................................12

*Eichenberger v. ESPN, Inc.* (*Eichenberger*),
876 F.3d 979 (9th Cir. 2017) ......................................................................................5

*Fiol v. Doellstedt*,
50 Cal. App. 4th 1318 (1996) ....................................................................................16

*Flanagan, v. Flanagan*,
27 Cal.4th 766 (2002) ........................................................................................18, 19

*Fogelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ....................................................................................26

*Free Range Content, Inc. v. Google Inc.*,
2016 WL 2902332 (N.D. Cal. May 13, 2016) ............................................................8

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ....................................................5, 16

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. Jul. 14, 2025)...............................................................5

*Garcia v. Build.com, Inc.*,
2023 WL 4535531 (S.D. Cal. July 13, 2023) ............................................................15

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......................................................................15

*Gutierrez v. Converse*,
2025 WL 1895315 (9th Cir. July 9, 2025)..................................................................18

*Hannant v. Culbertson*,
2025 WL 2413894 (C.D. Ill. Aug. 20, 2025)...............................................................22

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .....................................................................16

*Hernandez-Silva v. Instructure, Inc.*,
2025 WL 2233210 (C.D. Cal. Aug. 5, 2025), *appeal filed*, No. 25-5438 (9th Cir. Aug. 27, 2025) ..................................................................................................16

*Hill v. NCAA*,
7 Cal. 4th 1 (1994) ....................23, 24, 25

*Hoffman v. Cenlar Agency, Inc.*,
2013 WL 1285126 (S.D. Cal. Mar. 27, 2013) ....................18

*In re Apple Data Priv. Litig.*,
2026 WL 146025 (N.D. Cal. Jan. 20, 2026) ....................10, 20

*In re Evans*,
69 F.4th 1101 (9th Cir. 2023) ....................13

*In re Facebook, Inc. Internet Tracking Litigation* (*In re Facebook*),
956 F.3d 589 (9th Cir. 2020) ....................5

*In re Google Gmail Litig.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ....................10

*In re Google Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)....................11

*In re Google, Inc. Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ....................7, 25

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................7, 25

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................7, 8, 9, 24

*Karwowski v. Gen Digit., Inc.*,
2025 WL 3002610 (9th Cir. Oct. 27, 2025)....................10

*Katz-Lacabe v. Oracle Am.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ....................11, 12

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025)....................8

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ....................5, 7

*King v. Bumble Trading, Inc.*,
393 F. Supp. 3d 856 (N.D. Cal. 2019) ....................13, 14

*King v. Hard Rock Café Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) ....................18, 19, 25

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ....................9, 11

*Licea v. Vitacost.com*,
683 F. Supp. 3d 1118 (S.D. Cal. 2023) ........ 14, 15

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 25

*Mikulsky v. Bloomingdale's*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) ........ 9, 10

*Mitchener v. CuriosityStream, Inc.*,
2025 WL 2272413 (N.D. Cal Aug. 6, 2025) ........ 20

*Palacios v. Fandom, Inc.*,
2024 WL 5494527 (Cal. Super. Ct. Sep. 24, 2024) ........ 22

*Parziale v. HP, Inc.*,
2020 WL 5798274 (N.D. Cal. Sept. 29, 2020) ........ 3, 14

*Patrick Collins, Inc. v. Doe*,
2012 WL 12883208 (S.D. Cal. Nov. 14, 2012) ........ 19

*Pemberton v. Rest. Brands Int'l, Inc.*,
2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) (Corley, J.) ........ 5, 6, 14

*Petroliam Nasional Berhad v. GoDaddy.com*,
737 F.3d 546 (9th Cir. 2013) ........ 23

*Planned Parenthood Fed'n of Am. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ........ 12, 13

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ *passim*

*Price v. Converse, Inc.*,
805 F. Supp. 3d 1102 (C.D. Cal. 2025) ........ 6

*Price v. Headspace, Inc.*,
2025 WL 1237977 (Cal. Super. Ct. Apr. 01, 2025) ........ 20

*Ramos v. Gap, Inc.*,
2025 WL 2144837 (N.D. Cal. Jul. 29, 2025) ........ 9, 10

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........ 18, 19

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........ 15

*Rodriguez v. Ink Am. Int'l Grp. LLC*,
2025 WL 4034985 (Cal. Super. Ct. Dec. 10, 2025) ........ 17

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. Jun. 5, 2024) ....................11

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ....................6, 14, 15

*Rusow v. SkinSpirit Essential LLC*,
2026 WL 453476 (N.D. Cal. Feb. 18, 2026) ....................14

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025)....................6

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. Sep. 27, 2021) ....................24

*Salinas Valley Mem'l Healthcare Sys. v. Monterey Peninsula Horticulture, Inc.*,
2019 WL 2569545 (N.D. Cal. June 21, 2019)....................8

*Sanchez v. Cars.com*,
2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025)....................20

*Smith v. Maryland*,
442 U.S. 735 (1979)....................19, 24

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ....................19

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................5, 7

*Sussman v. ABC*,
186 F.3d 1200 (9th Cir. 1999) ....................10, 11, 12, 13

*Tate v. VITAS Healthcare*,
762 F. Supp. 3d 949 ....................16

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024), *aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025) ....................25

*Trader Joe's Co. v. Trader Joe's United*,
150 F.4th 1040 (9th Cir. 2025) ....................3, 4

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).................... *passim*

*United States v. Acevedo-Lemus*,
2016 WL 4208436 (C.D. Cal. Aug. 8, 2016), *aff'd*, 800 F. App'x 571 (9th Cir. 2020) ....................24

*United States v. Miller*,
425 U.S. 435 (1976)....................19

*Valenzuela v. Keurig Green Mountain*,
674 F. Supp. 3d 751 (N.D. Cal. 2023)....................16

*Valenzuela v. Kroger Co.*,
2024 WL 1336959 (C.D. Cal. Mar. 28, 2024)....................16

*Van Buren v. United States*,
593 U.S. 374 (2021)....................22

*Williams v. DDR Media, LLC*,
757 F. Supp. 3d 989 (N.D. Cal. 2024)....................17

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)....................24

*Zocco v. Nelnet, Inc.*,
2026 WL 242037 (N.D. Cal. Jan. 29, 2026)....................11

**Statutes**

Electronic Communications Privacy Act of 1986 ("ECPA"),

18 U.S.C. § 2510 *et seq*.................... *passim*

California Invasion of Privacy Act ("CIPA")

Cal. Penal Code § 630 *et seq*. .................... *passim*

Fed. R. Civ. P. 12(b)(1)....................1, 4, 26

Fed. R. Civ. P. 12(b)(6)....................1, 4, 26

**Other Authorities**

Restatement (Second) of Torts § 652D cmt. a (updated Sep. 2025)....................7

Defendant JRSK, Inc. d/b/a Away ("Away") respectfully submits this memorandum of law in support of its motion to dismiss plaintiffs Taylor Surh's and Katie Klaus's (together, "Plaintiffs") Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I. INTRODUCTION

The crux of Plaintiffs' complaint is that certain information they voluntarily provided to Away when making purchases on the www.awaytravel.com website (the "Website") was shared with third parties without their consent. Plaintiffs are customers who visited the Website to purchase suitcases, providing Away with their names, payment, and other contact information to facilitate these transactions. Plaintiffs now allege Away invaded their privacy by intercepting and disclosing information related to their use of the Website to Google, Meta and Criteo. But none of the information allegedly disclosed to these third parties—much of which Plaintiffs admit is obfuscated—identifies Plaintiffs any more than the information they themselves provided to Away. Plaintiffs assert several claims, alleging Away installed wiretaps or pen registers on its own website; recorded "confidential" communications; and invaded Plaintiffs' privacy. These claims, however, are not actionable for six reasons.

***First***, as the Supreme Court explained in *TransUnion* and the Ninth Circuit explained in *Popa v. Microsoft*, statutory violations alone are insufficient to create a concrete injury for purpose of Article III standing. Instead, for injuries that allegedly arise from privacy violations, Plaintiffs must allege they suffered a concrete harm analogous to those harms protected at common law. Specifically, Plaintiffs must analogize their claims to one or more of the four traditionally recognized invasion of privacy torts: intrusion upon seclusion, publication of private fact, misappropriation of likeness, and false light. They fail to do so here. Allegations of free-roaming privacy rights, such as a general expectation of privacy in internet communications or a right to control the dissemination of information provided to third parties online, are inadequate. Plaintiffs have therefore failed to establish that they have Article III standing.

***Second***, Plaintiffs agreed to Away's Terms of Use and Privacy Policy, various provisions of which require dismissal of their claims. Plaintiffs failed to abide by agreed upon pre-litigation dispute resolution processes set forth by Away's Terms of Use, which required they attempt to resolve any disputes in connection with Away's services in good faith before bringing a claim. Away's Privacy Policy also discloses Away may collect and disclose personal and device identifiers (email, IP address,

etc.) and other Website activity with third parties for marketing and advertising purposes. Plaintiffs thus consented to the alleged conduct, and their claims should be dismissed for this reason as well.

***Third***, Plaintiffs have failed to plead any wiretapping claims under the Electronic Communications Privacy Act (the "ECPA") or the California Invasion of Privacy Act ("CIPA") § 631. Under the ECPA, Away—as a party to any communication between Plaintiff and the Website—is permitted to intercept any such communication unless Away's motivation for the interception was to commit some independent crime or tort. Plaintiffs do not plausibly allege a criminal or tortious motive. Plaintiffs also fail to plausibly allege a violation of CIPA § 631. As an initial matter, Plaintiffs agreed to a New York choice of law provision and thus cannot pursue a claim under California law. Even if Plaintiffs could plead a claim under California law, Plaintiffs cannot state a claim under CIPA. As to Plaintiff Surh, he pleads that he made his purchase in November 2024, over a year prior to the filing of the initial complaint, and his claim is therefore barred by CIPA's statute of limitations. Moreover, parties to communications, as here, are permitted to record and disclose conversations to which they are a party. In addition, Plaintiffs have not pled facts plausibly establishing any third party plausibly "read" any communications between Plaintiffs and Away, which is also required under CIPA § 631. For these reasons, Plaintiffs fail to plausibly allege wiretapping claims under the ECPA or CIPA.

***Fourth***, Plaintiffs do not plausibly allege a violation of CIPA § 632, which prohibits the use of an amplifying or recording device to eavesdrop on or record confidential communications without consent. CIPA § 632 also only prohibits recording of communications that are intended to be kept private, and there is a presumption that internet communications are not intended to be private. Moreover, CIPA § 632 only deals with eavesdropping and recording—it does not prohibit disclosure.

***Fifth,*** Plaintiffs have not stated a claim under CIPA § 638.51. Plaintiffs themselves plead that the technologies at issue collect the content of communications. Compl. ¶ 102. By definition, pen register and trap and trace devices do not collect contents. Even if the Court were to ignore the language of the statute and conclude that § 638.51 applies to technologies that collect the contents of communications, the alleged conduct here still does not map onto the operation of a pen register or trap and trace device within the statutory definition. Plaintiffs also misconstrue § 638.51 as a vehicle for establishing derivative liability, when the statute does not forbid the downstream use of data. Finally,

Away, as an electronic communications service provider, cannot be liable under the statute.

***Sixth***, Plaintiffs fail to plausibly allege a privacy claim under the California Constitution because they fail to establish a protected privacy interest in the information disclosed; that they had a reasonable expectation that any of the information provided to Away would be kept private; or that the alleged disclosure was highly offensive, especially because the allegedly disclosed information was obfuscated.

For these reasons, the Court should dismiss the complaint in its entirety.

## II. BACKGROUND

Away is a luggage manufacturer and retailer that owns and operates an online store on its Website, where it sells suitcases, bags, accessories, and more. *See* Away, https://www.awaytravel.com/ (last visited Mar. 4, 2026).1 Taylor Surh and Katie Klaus (together, "Plaintiffs") allegedly purchased suitcases from the Website in November 2024 and June 2025. ECF 19, First Amended Class Action Complaint ("Compl.") at ¶¶ 6, 9. During their visits to the Website, Plaintiffs allege both routing information and the content of their communications with the Website were intercepted and disclosed. Compl. ¶ 102. Plaintiffs define routing information as "IP addresses, Device Metadata, and/or the unique user IDs" (*id.* ¶ 148) and content as "the buttons, links, pages, and tabs they click and view related to the shopping and products sought from Defendant." *Id.* ¶ 102.

The details of the alleged interceptions and disclosures are murky and, in places, contradictory. At times Plaintiffs suggest Away "disclosed" information to Meta, Google, and Criteo (together, the "Third Parties"). *See, e.g.*, *id.* ¶ 182. At others, Plaintiffs suggest that the Third Parties intercepted information related to Plaintiffs' interactions with the Website. *See, e.g.*, *id.* ¶ 129. Nonetheless, Plaintiffs suggest the disclosure or interception to Third Parties of their routing information and the alleged contents of their interactions with the Website resulted in an invasion of privacy. *E.g.*, *id.* ¶¶ 186, 229. Plaintiffs admit that the allegedly disclosed information included obfuscated values, and admit that they voluntarily provided the information at issue to Away. *Id.* ¶¶ 116, 135, 139.

---

[1] The Court may consider the materials from the Away Website attached to the Pardes Declaration, including current and prior versions of the Terms of Use and Privacy Policy, as the website and Terms are referenced and cited in the Complaint (¶¶ 1, 2 n.2, 159, 197–99) and central to Plaintiffs' claims. *Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040, 1053 n.2 (9th Cir. 2025) (considering "website under the doctrine of incorporation by reference" was appropriate where the complaint "extensively referenced [the] website"); *Parziale v. HP, Inc.*, 2020 WL 5798274, at *3 (N.D. Cal. Sept. 29, 2020) ("Courts have taken judicial notice of . . . web pages available through the Wayback Machine . . . .").

Plaintiffs also suggest that a banner featured on the Website did not adequately disclose Away's use of cookies and "tracking technologies[,]" but Plaintiffs do not plead they themselves encountered or relied on that banner. Compl. Fig. 1–3. Away's Terms and Privacy Policy further rebut Plaintiffs' purported privacy expectations. Contrary to Plaintiffs' allegations (*Id.* ¶ 2) the Terms do not state Away does "not store directly personal information" and instead direct users of the Away Website to Away's Privacy Policy (which is incorporated into Away's Terms). The Privacy Policy, in turn, discloses the kinds of information Away collects on its website and shares with third party advertisers, which includes the kinds of information allegedly disclosed here, including "Identifiers," "Commercial Information," and "Internet and other electronic activity[.]"[2]

Based off these alleged interceptions and disclosures, Plaintiffs assert claims under the ECPA; CIPA §§ 631, 632, and 638.51; and an invasion of privacy claim under the California Constitution.

## III. LEGAL STANDARD

Under Rule 12(b)(1), for a federal court to have subject-matter jurisdiction, Plaintiffs must show they have Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021). To establish Article III standing, a plaintiff must demonstrate that they suffered "an injury in fact that is concrete, particularized, and actual or imminent[.]" *Id.* at 423. "As the party invoking federal jurisdiction, the plaintiff bears the burden of demonstrating that [they have] standing." *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025) (citation modified) (citing Transunion, 594 U.S. at 430–31).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must disregard conclusory allegations, which are not entitled to the assumption of truth, and determine whether the remaining "well-pleaded factual allegations" suggest that the plaintiff has a plausible—as opposed to merely conceivable—claim for relief. Id. at 679.

## IV. ARGUMENT

### A. Plaintiffs Have Not Alleged an Injury Sufficient to Confer Article III Standing

To establish Article III standing, Plaintiffs must allege a concrete injury, "even in the context of

---

[2] This information can be found at https://www.awaytravel.com/pages/privacy-policy and is incorporated by reference and judicially noticeable. *See Trader Joe's*, 150 F.4th at 1053 n.2.

a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Violations of privacy statutes do not in and of themselves confer Article III standing. *See id*. at 793; *see also Khamooshi v. Politico LLC,* 786 F. Supp. 3d 1174, 1181 (N.D. Cal. 2025) ("*TransUnion* precludes standing where plaintiffs fail to allege a concrete injury, even if they have asserted a violation of CIPA.") *Dawidzik v. Tesla, Inc*., 2025 WL 3786963, at *3 (C.D. Cal. Dec. 29, 2025) (similar). Instead, Plaintiffs must demonstrate a "physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American Courts." *TransUnion*, 594 U.S. at 427. Plaintiffs here do not allege a physical or monetary harm. Plaintiffs also fail to allege any cognizable intangible harm recognized at common law.

### 1. A Loss of Control of One's Information Alone Does Not Create a Concrete Injury Post-*TransUnion* and *Popa*

The Ninth Circuit has narrowed the range of injuries sufficient to establish Article III standing. Previously, some courts in this District—including this Court—found concrete injuries where defendants allegedly "deprived [Plaintiffs] control of [their] personal information regarding [their] online activity." *See Pemberton v. Rest. Brands Int'l, Inc.,* 2025 WL 3268404, at *3 (N.D. Cal. Nov. 24, 2025) (Corley, J.); *see also Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *6 (N.D. Cal. Aug. 29, 2025); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *6–7 (N.D. Cal. Jul. 14, 2025). These finds were based on the Ninth Circuit's decision in *In re Facebook, Inc. Internet Tracking Litigation (In re Facebook),* 956 F.3d 589, 598 (9th Cir. 2020) (citing *Eichenberger v. ESPN, Inc. (Eichenberger)*, 876 F.3d 979, 983 (9th Cir. 2017)). However, the Ninth Circuit clarified in *Popa* that allegations that a plaintiff lost the ability to control his or her information (as described in *In re Facebook* and *Eichenberger*) are insufficient to establish Article III standing. *Popa*, 153 F.4th at 794. Instead, "courts should assess whether 'plaintiffs have identified a close historical or common-law analogue for their asserted injury.'" *Id.* (quoting *TransUnion*, 594 U.S. at 424). These include the "four discrete torts that protected specific kinds of privacy-related harms" at common law, including: intrusion upon seclusion, publication of private fact, misappropriation of likeness, or false light. *Id*. at 792, 794.

This Court's decision in *Pemberton* does not establish the Plaintiffs here have Article III standing. In *Pemberton*, the plaintiff allegedly used and relied upon a cookie consent banner that was immediately presented on the website. 2025 WL 3268404, at *1. Here, Plaintiffs make no allegations

that they personally saw, interacted with, or relied on representations shown in the banner in Fig. 1 of the Complaint. Perhaps tellingly—and further unlike *Pemberton*—Plaintiffs here do not bring common law misrepresentation claims or invasion of privacy claims based on the alleged misrepresentations. *Id.* at *7. Plaintiffs' allegations here therefore substantively differ from those in Pemberton.

### 2. Plaintiffs Allege No Cognizable Intangible Harm Traditionally Recognized at Common Law

The Complaint provides fleeting references to privacy rights, but at no point explicitly references or analogizes Plaintiffs' claims to privacy rights traditionally protected by common law torts. This falls short of the pleading requirements for concrete injuries predicated on intangible harms under *TransUnion* and *Popa. Popa*, 153 F.4th at 791. Instead, Plaintiffs here allege a generic invasion of privacy "pitched at a high level of generality[,]" as in *Popa,* which does not qualify as a concrete harm. *Popa*, 153 F.4th at 792; *see also Dawidzik*, 2025 WL 3786963, at *4; *Price v. Converse, Inc., 805* F. Supp. 3d 1102, 1105 (C.D. Cal. 2025) (mere allegation of privacy invasion "does not align" with *TransUnion);* Compl. ¶¶ 83, 117, 124. Plaintiffs' claims thus fail at the threshold.

Plaintiffs' claims are further inapposite to "the 'highly offensive' interferences or disclosures that were actionable at common law[,]" namely, intrusion upon seclusion and publication of private fact.[3] *Popa*, 153 F.4th at 791. Intrusion upon seclusion claims have traditionally protected claimants from highly offensive intrusions into private affairs. *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *6 (C.D. Cal. Feb. 27, 2025). Crucially, the *intrusion* must be highly offensive, disclosure of information is *not* a basis for an intrusion upon seclusion claim. *Id.* Accordingly, there was no "intrusion" by Away, let alone a highly offensive one. Plaintiffs willingly "provided" their information to Away, a party to the communication, and therefore Away neither intruded into Plaintiffs' affairs nor could Away's receipt of the communications be considered highly offensive. Compl. ¶ 116; *Saedi*, 2025 WL 1141168, at *8 (holding "one cannot logically intrude into communications to which they are a party"); *see also Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) (affirming dismissal of CIPA wiretapping claim and explaining, "[i]t is never a secret to one party to a conversation that the

[3] There is no indication that Plaintiffs intend to bring claims for misappropriation of likeness or false light, the other privacy torts recognized at common law. *See Popa*, 153 F.4th at 792.

other party is listening to the conversation”).

Plaintiffs’ claims are similarly distinct from the publication of private fact tort, which historically protected “‘giv[ing] publicity’ to a matter that concerns ‘the private life of another,’ [when] the information is ‘highly offensive to a reasonable person[.]’” *Popa*, 153 F.4th at 791*; Khamooshi,* 786 F. Supp. 3d at 1180. Here, Away did not give “publicity” to any matter because the allegedly disclosed information has neither “reache[d], or is sure to reach, the public.” Restatement (Second) of Torts § 652D cmt. a (updated Sep. 2025) (“‘Publicity,’ . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge”). Away similarly did not disclose information that was considered highly offensive at common law. *In re Google, Inc. Priv. Pol’y Litig.*, 58 F. Supp. 3d 968, 973-74, 987-988 (N.D. Cal. 2014) (collection and disclosure of browsing histories was not highly offensive); *In re iPhone Application Litig., 844* F. Supp. 2d 1040, 1050, 1063 (N.D. Cal. 2012) (no invasion of privacy based on disclosure of addresses, device identifiers, gender, and age, among other information). Indeed, Plaintiffs, who plead they already “provided Facebook and Google with [their] personally identifiable information . . . including [their] full name, date of birth, phone number, and email address” have not plausibly alleged they would find it highly offensive for those same parties to have received information they apparently already know. Compl. ¶¶ 5, 8. Accordingly, there is no “common-law analogue for [Plaintiffs’] asserted injury” and they do not establish a concrete injury for Article III standing. *Popa,* 153 F.4th at 794 (citation omitted); *Dawidzik*, 2025 WL 3786963, at *5.

**3. Plaintiffs Have No Privacy Interest in Contentless Information**

Plaintiffs claim the tracking technologies in the Complaint constitute pen register and trap and trace devices—devices that, by definition, cannot collect “the contents of a communication.” CIPA § 638.50(b), (c). However, the transmission of contentless information cannot form the basis of Article III standing. Even before *Spokeo* and *TransUnion*, the Ninth Circuit recognized “a person does not have a reasonable expectation of privacy” in “record information about” communications, like the inherently “contentless” (CIPA § 638.50) information collected by pen registers and trap and trace devices. *In re Zynga Priv. Litig., 7*50 F.3d 1098, 1107-08 (9th Cir. 2014) (holding “an allegation that Facebook and Zynga disclosed personally identifiable information is not equivalent to an allegation that they disclosed

the contents of a communication"). In other words, the disclosure of contentless information cannot support Plaintiffs' Article III standing positions. *Khamooshi v. Politico LLC*, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) (plaintiffs did not plead a privacy interest where "allegations regarding device type, browser type, and 'device fingerprints' [were] even less specific than the 30 different categories of information alleged in *Popa*¸ which . . . included the device type, browser type, and metadata akin to fingerprinting"). Plaintiffs therefore lack Article III standing and their claims should be dismissed.

**B. Plaintiffs Also Did Not Abide By the Pre-Dispute Process Set Forth in Away's Terms**

As explained in Away's motion to compel arbitration, Plaintiffs agreed to Away's Terms when making purchases. As part of these Terms, they agreed to "notify the other party in writing of any Disputes…not less than thirty (30) days from the date they arise, so you and we can attempt in good faith to resolve the Dispute informally." Pardes Decl. Ex. G (Current Terms) § 15. Here, Plaintiffs do not plead they provided Away with notice of their claims before bringing suit. See generally Compl. Under California law, such conditions precedent are enforceable and failure to abide by such processes warrants dismissal. *See Brosnan v. Dry Cleaning Station Inc.,* 2008 WL 2388392, at *1-2 (N.D. Cal. June 6, 2008) (dismissing claims where "Plaintiffs did not pursue [mandatory] mediation prior to filing their lawsuit" and holding "[f]ailure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal"); *Centaur Corp. v. ON Semiconductor Components Indus., LLC,* 2010 WL 444715, at 3–4 (S.D. Cal. Feb. 2, 2010) (dismissing lawsuit as "premature" where the parties agreed to attempt to resolve disputes through "negotiation, mediation or other form[s] of ADR" before filing a lawsuit); *Salinas Valley Mem'l Healthcare Sys. v. Monterey Peninsula Horticulture, Inc., 2019* WL 2569545, at *6 (N.D. Cal. June 21, 2019) (similar); *Free Range Content, Inc. v. Google Inc.,* 2016 WL 2902332, at 13–14 (N.D. Cal. May 13, 2016) (similar).

**C. Plaintiffs Consented to the Challenged Use and Disclosures**

Plaintiffs allege that "when consumers enter the [Away] Website, Defendant warrants that the targeting cookies it utilizes for advertising purposes 'do not store directly personal information'" and provide a link to Away's Terms on its website. Compl. ¶ 2 & n.2 (citing https://www.awaytravel.com/pages/terms). But Away's Terms say no such thing. *See* Pardes Decl. Exs. D (Prior Terms), Ex. G (Current Terms). Instead, every applicable iteration of the Terms directs users

to Away's Privacy Policy for "information about how we collect, use, disclose and otherwise process information about you and your use of our Services." *See* Exs. D § 2, Ex. G § 2. The Privacy Policy, in turn, provides that Away "and the third parties we work with use cookies and other tracking technologies in connection with the Services[.]" *Id*. Ex. H at 8 (Current Privacy Policy). Therefore, based off Plaintiff's own allegations, they were made aware, or reasonably should have been aware, of the alleged internet tracking technologies on the Website and chose to continue to use the Website, warranting dismissal. *See Lakes v. Ubisoft, Inc.,* 777 F. Supp. 3d 1047, 1054–60 (N.D. Cal. 2025) (dismissing ECPA and CIPA claims where Plaintiffs consented to the use of tracking technologies).

**D. Plaintiffs Do Not Plausibly Allege a Claim Under the ECPA**

The ECPA provides a right of action against a person who intentionally intercepts the contents of "any wire, oral, or electronic communication" in violation of 18 U.S.C. § 2511(1)(a), (c). But Plaintiffs have not plausibly alleged an ECPA claim because (1) Plaintiffs do not plausibly plead the contents of communications were disclosed to third parties, (2) Away is a party to the alleged communications, and (3) the alleged conduct does not trigger the ECPA's crime-tort exception.

**1. The Alleged "Communications" Were Contentless**

Violations of the ECPA and CIPA §§ 631 and 632 require the "content" of communications to be intercepted. However, record information, *i.e.*, "information regarding the characteristics of the message that is generated in the course of the communication[,]" does not qualify as content. *In re Zynga Priv. Litig.,* 750 F.3d at 1106, 1108-1109; *see also Mikulsky v. Bloomingdale's,* 713 F. Supp. 3d 833, 846 (S.D. Cal. 2024) ("[I]nteractions with [a] website" are not contents). Accordingly, the ECPA and CIPA §§ 631, 632 are inapplicable where no contents are transmitted. *See Ramos v. Gap, Inc., 2025* WL 2144837, at *3–4 (N.D. Cal. Jul. 29, 2025) ("[t]he definition of 'contents' under CIPA is the same as under the [ECPA]."). Plaintiffs only specifically allege that "the buttons, links, pages, and tabs [Plaintiffs] click" were contents in their Complaint (Compl. ¶¶ 102, 130) but such information is record information, not "content" of communications. *See Mikulsky*, 713 F. Supp. 3d at 845; *Ramos*, 2025 WL 2144837, at *4; *In re Apple Data Priv. Litig.*, 2026 WL 146025, at *7 (N.D. Cal. Jan. 20, 2026). Accordingly, Plaintiffs have not plausibly alleged the interception or disclosure of contents, as required for their ECPA and CIPA §§ 631 and 632 claims.

**2. The Direct Party Exception Applies**

Further, the ECPA has a one-party exception to liability. 18 U.SC. § 2511(2)(d) provides "[i]t shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception[.]" Here, Plaintiffs allege that they "provided their PII to Defendant pursuant to their purchase from the website." Compl. ¶ 116. Accordingly, Away "was the party that was meant to, and did, receive Plaintiffs' communications on the Website, under the party exception, 'any alleged interception of the communications is not actionable.'" *B.K. v. Eisenhower Med. Ctr.,* 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (citing *Pena v. GameStop, Inc*., 670 F. Supp. 3d 1112, 1118 (S.D. Cal. 2023)); *Karwowski v. Gen Digit., Inc*., 2025 WL 3002610, at *2 (9th Cir. Oct. 27, 2025) (affirming application of the party exception where defendant "explicitly acknowledge[d] that [defendant] is potentially a necessary party for website verification"); *In re Google Gmail Litig.,* 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013).

### 3. The Crime-Tort Exception Does Not Apply

A party to a communication may only be held liable under the ECPA if it intercepted the communication "for the purpose of committing any criminal or tortious act[.]" 18 U.S.C. § 2511(2)(d). But Plaintiffs have failed to plausibly allege that this exception applies. Under Ninth Circuit precedent, this exception requires that Away (a) intercepted the communication *for the purpose of* committing a further criminal or tortious act at the time of interception and (b) that the criminal or tortious act be "subsequent to" the interception of the communication itself. *Sussman v. ABC*, 186 F.3d 1200, 1202-03 (9th Cir. 1999). Plaintiffs have satisfied neither of these requirements, and thereby fail to trigger the exception.

#### a. The Alleged Interception Was Not *For the Purpose of* Committing a Distinct Crime or Tort

In *Sussman,* the Ninth Circuit explained "where the [interception] is legal, but is done for the purpose of facilitating some further impropriety, such as blackmail, [the crime-tort exception] applies. Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere." *Sussman*, 186 F.3d at 1202-03. In other words, "[a]lleged interceptions fall within the tort or crime exception only where the 'primary motivation or a determining factor in [the interceptor's] actions has

been to injure plaintiffs tortiously.'" *In re Google Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014); *see also Zocco v. Nelnet, Inc.*, 2026 WL 242037, at *5 (N.D. Cal. Jan. 29, 2026); *Lakes*, 777 F. Supp. 3d at 1057–58; *Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (C.D. Cal. Jun. 5, 2024*); Katz-Lacabe v. Oracle Am.,* 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023). Plaintiffs here do not plausibly allege Away acted "for the purpose of facilitating some further impropriety" and their allegations accordingly fail. *Sussman*, 186 F.3d at 1202.

At best, Plaintiffs make conclusory allegations that Away "engaged in . . . conduct for unlawful and tortious purposes, including, invasion of privacy[.]" Compl. ¶ 186. But Plaintiffs do not—and cannot—plausibly allege Away's "primary motivation" was to commit an invasion of privacy. *In re Google Gmail Litig.*, 2014 WL 1102660, at *18 n.13. Indeed, Plaintiffs themselves allege otherwise: "Defendant knowingly and intentionally incorporated a host of tracking technology for marketing, advertising, and analytics purposes on the Website[.]" Compl. ¶ 10. As other courts have found, there is nothing criminal or tortious about using an analytics service to improve a website's functionality or advertise to customers. *Katz-Lacabe,* 668 F. Supp. 3d at 945 (the crime-tort exception "does not apply . . . where Defendant's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money'"); *Lakes*, 777 F. Supp. 3d at 1057 (dismissing ECPA claims where Plaintiffs pled defendants used tracking technologies for economic benefit and holding "Plaintiffs cannot assert the crime-tort exception simply by arguing that Defendant's conduct was illegal or tortious"); *Roe*, 2024 WL 2873482 at *6 ("the crime-tort exception is inapplicable where a defendant's primary motivation is to make money rather than to injure plaintiffs tortiously or criminally").

Plaintiffs also suggest that Defendant engages in tortious or criminal conduct by allegedly "associating the content of Plaintiffs' and Class members' electronic communications with preexisting consumer profiles and using the contents of their electronic communications in a manner that exceeds what Defendant promised Plaintiffs . . . on its website." Compl. ¶ 186. But Plaintiffs fail to identify how this is tortious or criminal behavior, and businesses are allowed to use information customers share with them for business purposes. *Katz-Lacabe*, 668 F. Supp. 3d at 945; *Roe*, 2024 WL 2873482, at *6.

Therefore, Plaintiffs have not plausibly alleged Away intercepted communications for the purpose of facilitating a crime or tort within the meaning of the ECPA.

**b. Plaintiffs Do Not Plausibly Allege a Subsequent Crime or Tort**

For the crime-tort exception to apply, the further crime or tort must be a "*subsequent* crime or tort[,]" which Plaintiff has not plausibly alleged. *Sussman*, 186 F.3d at 1202 (emphasis added). This requirement stems from the "temporal thread that runs through the fabric of the statute and the case law. At the time of the recording the offender must intend to use the recording to commit a criminal or tortious act." *Planned Parenthood Fed'n of Am. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (citing *Caro v. Weintraub*, 618 F.3d 94, 99 (2nd Cir. 2010). Accordingly, to qualify as a further crime or tort under the crime-tort exception, the alleged crime or tort may not "inhere" the interception. *Doe v. Kaiser Found. Health Plan*, 2024 WL 1589982, at *8-10 (N.D. Cal. Apr. 11, 2024) (ECPA's crime-tort exception did not apply to tracking technologies when the further crime or tort "inheres in the alleged interception"); *see also Planned Parenthood*, 51 F.4th at 1136 (holding "[Plaintiff's] argument is circular: according to [Plaintiff], the civil RICO conspiracy is furthered by the recordings, and the recordings themselves further the ongoing civil RICO conspiracy. Such reasoning is not permitted by [the crime-tort exception]"); *Caro*, 618 F.3d at 101 (holding the "tort of invasion of privacy by intrusion upon the seclusion of another occurs through the simple act of the recording *itself* and therefore cannot satisfy the Wiretap Act's requirement of a separate and independent tortious intent"). There is a clear practical reason for this requirement: If an act synonymous with the interception could trigger the crime-tort exception, the crime-tort exception would swallow the party exception.

Plaintiffs here seek to invoke the crime-tort exception based on circular reasoning rejected by the Ninth Circuit. They effectively argue the interception resulted in an invasion of privacy, and use said invasion of privacy to trigger the crime-tort exception, Compl. ¶ 186, basing their invasion of privacy allegations on an interest in "(1) precluding the dissemination of their sensitive, confidential online communications; and (2) making personal decisions and/or conducting personal activities without observation[.]" *Id.* ¶ 228. But these "invasions" are synonymous with the alleged interceptions. *See e.g*,. *id*. ¶ 184 ("By intentionally disclosing or endeavoring to disclose Plaintiffs' . . . communications to Google, Meta, and Criteo through the Tracking Technologies . . . Defendant violated [the ECPA]"). This does not suffice. *Planned Parenthood*, 51 F.4th at 1136; *Sussman*, 186 F.3d at 1203 ("Although ABC's taping may well have been a tortious invasion of privacy under state law, plaintiffs have produced no probative evidence that ABC had an illegal or tortious purpose when it made the tape.").

Therefore, Plaintiffs do not—and cannot—allege Away intercepted any communication in furtherance of a later temporally distinct crime or tort. Plaintiffs accordingly fail to invoke the crime-tort exception, the party exception applies, and Plaintiffs' ECPA claims fail.

**4. Plaintiffs Cannot Plausibly Allege a "Disclosure" in Violation of §2511(1)(c)**

Lastly, to the extent Plaintiffs suggest that Defendant violated § 2511(1)(c) of the ECPA by "disclosing" class members' data, they must first plausibly allege an interception in violation of the ECPA. Compl. ¶ 184. Section 2511(1)(c) only applies to disclosures obtained via an "interception. . . in violation of [the ECPA]." 18 U.S.C. 2511(1)(c); *In re Evans*, 69 F.4th 1101, 1105 (9th Cir. 2023) ("The plain meaning of the text controls"). Because Plaintiffs have not plausibly alleged an interception in violation of the ECPA, they cannot bring a claim for unauthorized disclosure under § 2511(1)(c).

**E. Plaintiffs Do Not Plausibly Allege a Violation of CIPA § 631**

To begin, while Plaintiffs purport to bring privacy claims predicated on California state law, they agreed to a New York choice of law and venue provision in Away's Terms of Use. Pardes Decl. Ex. G § 15 ("[A]ny such Dispute and these Terms shall be governed by and construed in accordance with the substantive and procedural laws of the state of the State of New York[.]"). Therefore, Plaintiffs' California claims should be dismissed because they agreed that New York law would apply. *King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 867 (N.D. Cal. 2019) (dismissing certain California statutory claims in face of New York choice of law provision). Even if the Court were to consider the merits of Plaintiffs' California state law privacy claims, they still fail for the reasons set forth herein.

**1. Plaintiff Surh's CIPA Claims Are Barred By the Statute of Limitations**

Plaintiff Surh pleads that he purchased a suitcase in November 2024, at which point he was on notice that his information may be shared with third parties as set forth in Away's Privacy Policy.[4] This occurred over a year prior to the filing of the original complaint in this action, meaning Plaintiff Surh's CIPA claims are barred under the applicable one-year statute of limitation. *Pemberton,* 2025 WL 3268404, at *5-6 (dismissing CIPA claims based on one-year statute of limitation); *Rusow v. SkinSpirit*

[4] The then-effective version of the Privacy Policy to which Plaintiff Surh agreed is attached to the Pardes Declaration as Exhibit K, and is also available on the Wayback Machine, of which the Court may take judicial notice. *See* Internet Archive, Wayback Machine, https://web.archive.org/web/20241209202028/https://www.awaytravel.com/privacy-policy; *Parziale*, 2020 WL 5798274, at *3.

*Essential LLC*, 2026 WL 453476, at *1 (N.D. Cal. Feb. 18, 2026) (same); *Brodsky v. Apple Inc.,* 2019 WL 4141936, at *12 (N.D. Cal. Aug. 30, 2019) (dismissing CIPA and other claims based on applicable statutes of limitation). Plaintiffs' allegations of tolling miss the mark, Compl. ¶¶ 151-58, because Plaintiff Surh was on notice his information may be shared when he made his purchase, and he still waited over a year to bring his claims. *See Brodsky*, 2019 WL 4141936, at *11 (declining to apply tolling rules, including the delayed discovery rule, where individuals were aware of the alleged conduct on first logging in to their devices). Plaintiff Surh's CIPA claims should be dismissed accordingly.

**2. The Party Exception Exempts Away from Liability Under § 631**

Moreover, like the ECPA, CIPA § 631 provides an exemption from liability if the alleged wiretapper is a "party" to the communication. *Licea v. Vitacost.com*, 683 F. Supp. 3d 1118, 1121 (S.D. Cal. 2023). As California courts have long recognized, "'[e]avesdropping' is the problem the Legislature meant to deal with" when it enacted CIPA § 630 et seq. but "it is never a secret to one party to a conversation that the other party is listening to the conversation." *Ulrich*, 52 Cal. App. 3d at 899. It follows, contrary to Plaintiffs' suggestion (Compl. ¶ 194), "[a] party to a conversation is not liable under Section 631(a) for recording its own conversation." *Licea*, 683 F. Supp. 3d at 1121-22 (collecting cases). Nor is a party to a communication liable under § 631 for distributing a communication to which it was a party. *Ulrich*, 52 Cal. App. 3d at 898–99 (affirming judgment dismissing wiretapping claims where a party to a communication, unbeknownst to the other party, recorded and later distributed the conversations); *see also Graham v. Noom, Inc*., 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) ("[S]haring a record is not eavesdropping" for purposes of CIPA § 631); *Garcia v. Build.com, Inc*., 2023 WL 4535531 (S.D. Cal. July 13, 2023). Accordingly, Away cannot be held liable for recording conversations with Plaintiffs *or* for distributing said communications under CIPA § 631.[5]

Nonetheless, Plaintiffs improperly seek to hold Away liable under CIPA § 631 for alleged disclosures to third parties. Plaintiffs allege a process by which Away receives information from Plaintiffs and *then* transmits information to third parties, as is legally permitted. *See* Compl. ¶¶ 135–36. Plaintiffs claim they were "prompted to enter their email address, phone number, name and address[,]"

[5] Plaintiffs' citations to *Ribas* in the Complaint do not establish otherwise. *See* Compl. ¶¶ 33–34; *Ribas v. Clark*, 38 Cal. 3d 355, 360 n.3 (1985) (noting *Ulrich* "held, correctly, that section 631 does not penalize the secret recording of a conversation by one of the participants" to a communication).

and then, only "[w]hen a user completes the checkout process" does "Google receive[] the user's email, name phone number, and address." *Id.* ¶ 135. As further evidence of this process, the information is "sent and received in a hashed format[.]" *Id.* Plaintiffs did not enter their information in a hashed format (see id.), which leaves only one plausible conclusion: Plaintiffs sent Away their information, the information was hashed, and *then* the information was "sent and received[.]" See *id.* This same process is alleged for Criteo. *See id.* ¶¶ 139–40 (stating "Criteo also receives PII from Defendant" and "Defendant discloses . . . the user's hashed email address" (emphasis added)). Meta similarly only "receives" information "when a user selects the checkout button[,]" which occurs *after* a user has provided their information to Away. *Id.* ¶¶ 136–38. Under California Law, this alleged conduct is not prohibited by CIPA § 631, because as a party to the communication, Away is permitted to disclose those communications. *See Ulrich*, 52 Cal. App. 3d at 898–99; *Licea*, 683 F. Supp. 3d at 1121-22.

**3. Away Did Not Aid or Abet Third Parties**

Plaintiffs also do not plausibly allege Defendant aided and abetted a CIPA violation. While some courts have held otherwise, the better view is "in the absence of an explicit statutory scienter requirement, in California civil actions, the common law definition [of aiding and abetting] applies." *Valenzuela v. Kroger Co.*, 2024 WL 1336959, at *4 (C.D. Cal. Mar. 28, 2024); *see also Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325 (1996) (holding since a statute "does not provide a definition of 'aiding and abetting[,]'" "[i]t is appropriate, therefore, to consider the common law definition of aiding and abetting"). Therefore, Plaintiffs must show Away "(a) kn[e]w[] the other's conduct constitutes a breach of duty and g[a]ve[] substantial assistance or encouragement to the other to so act or (b) g[a]ve[] substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty[.]" *Kroger*, 2024 WL 1336959, at *4; *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) ("While the Complaint alleges that Defendant paid Genesys to intercept messages, it does not allege facts demonstrating Defendant acted with the requisite knowledge or intent to aid and abet Genesys's purported CIPA violation"). But Plaintiffs do not plausibly allege Away knew Meta, Google, or Criteo's actions violated CIPA. Thus, even if Plaintiffs plausibly alleged Google, Meta, or Criteo violated CIPA—which they have not—Plaintiffs do not plausibly allege Defendant knew of or intended to participate in a CIPA violation,

requiring dismissal of their CIPA claims.[6]

#### 4. Plaintiffs Do Not Plausibly Allege an "In Transit" Interception

Away also cannot be held liable under CIPA § 631 because Plaintiffs have not plausibly alleged a contemporaneous interception of information by Google, Meta, or Criteo. "To be liable [under CIPA § 631], the eavesdropper must listen to a communication . . . 'while [it] is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state.'" *Valenzuela v. Keurig Green Mountain*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023); *Hernandez-Silva v. Instructure, Inc*., 2025 WL 2233210, at *5 (C.D. Cal. Aug. 5, 2025) ("Learning the content of a communication after it has been sent is not eavesdropping"), *appeal filed*, No. 25-5438 (9th Cir. Aug. 27, 2025). As described above, Plaintiffs allege a stepwise process by which they input their information, the information was submitted by a button click, the information was hashed, and only then transmitted to Google, Meta, or Criteo. *See* Compl. ¶¶ 134–41. Therefore, any alleged "interceptions" by Google, Meta, or Criteo did not occur while any information was in transit, and Plaintiffs' CIPA claims fail for this additional reason.

Moreover, CIPA is a criminal statute, and the rule of lenity applies, which suggests CIPA should not apply here. *Doe v. Eating Recovery Ctr.*, 806 F. Supp. 3d 1109, 1118 (N.D. Cal. 2025). As Judge Chhabria explained, CIPA was enacted in the 1960s and uses technological conventions of its time, and a term like "in transit" is "ill-suited for application to internet communications." *Id.* at 1119. Because there is no indication the legislature intended to criminalize the conduct alleged, the "in transit" requirement should not be read "so broadly as to cover the conduct at issue here." *Id.* On the contrary, California enacted a statute that does regulate internet tracking in the California Consumer Protection Act, which does not require express consent to collect information, impose criminal penalties, or require a court order, meaning applying CIPA here would penalize conduct the legislature did not intend to reach. *Rodriguez v. Ink Am. Int'l Grp. LLC*, 2025 WL 4034985, *4 (Cal. Super. Ct. Dec. 10, 2025).

#### 5. Plaintiffs Have Not Pled Any Effort to *Read* the Hashed Information

To allege a CIPA § 631 violation, Plaintiffs must allege a person "reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit[.]"

---

[6] Cases such as *Tate v. VITAS Healthcare* and *Gabrielli v. Haleon US Inc*., which hold otherwise, fail to properly analyze CIPA's text, given the statute lacks an explicit, defined scienter requirement. 762 F. Supp. 3d 949, 959 (E.D. Cal. 2025); 2025 WL 2494368.

Plaintiffs suggest that the hashed data alleged in the Complaint equates to "plain text" that can be read. See Compl. ¶ 150. But as a court in this District explained, "an algorithm that transforms the data into an incomprehensible 'hash' that has no inherent substantive meaning" does not qualify as contents that can be read or learned *in transit*. *See Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024) ("The Court concludes that the phrase 'reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication' in CIPA requires some effort at understanding the substantive meaning of the message, report or communication, and that the evidence shows that TCPA Guardian does not 'read, attempt to read, or to learn the contents or meaning' of the information that is input on websites hosting that software."). Indeed, at no point do Plaintiffs plausibly allege any information was un-hashed, how any un-hashing was done, whether Away knew any third party un-hashed the information, or that any "substantive meanings" were gleaned from the hashed data. *See id.* Therefore, Plaintiffs' claims fail to the extent they rely on the transmission of hashed information.

#### 6. Plaintiffs Do Not Allege the Use of a Telephone

Because Plaintiffs base their claims on § 631(a)'s first clause, their claims fall short because they do not allege the use of a telephone. Compl. ¶ 197. Section 631(a)'s first clause (whereby a person "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument") requires use of a telephone, which Plaintiffs do not plead. *Gutierrez v. Converse*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025) (dismissing claim because plaintiffs did not allege the defendant made an "unauthorized connection through a telephone"). Plaintiffs thus fail to state a claim under CIPA § 631.

### F. Plaintiffs Do Not State a Claim Under CIPA § 632

CIPA § 632 "does not prohibit eavesdropping in general; it applies only to the use of 'any electronic amplifying or recording device' to eavesdrop upon or record a confidential communication." *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (quoting *People v. Soles*, 68 Cal. App. 3d 418, 419 (1977)). "A communication is confidential under section 632 if one of the parties 'has an objectively reasonable expectation that the conversation is not being overheard or recorded.'" *Id.* (quoting *Flanagan, v. Flanagan*, 27 Cal.4th 766, 776 (2002)). A confidential communication specifically excludes "any other circumstance in which the parties to the communication

may reasonably expect that the communication may be overheard or recorded." CIPA § 632(c). "[I]n California, courts have developed a presumption that Internet communications do not reasonably give rise to that expectation." *Revitch*, 2019 WL 5485330, at *3 (collecting cases); *King v. Hard Rock Café Int'l (USA), Inc.*, 2025 WL 1635419, at *5 (E.D. Cal. June 9, 2025) ("Courts generally find that internet communications do not have an objectively reasonable expectation of confidentiality, especially if those communications can be easily shared by the recipients of the communications") (quoting *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *6 (N.D. Cal. Dec. 30, 2024)). Importantly, a disclosure of a confidential communication is not actionable under CIPA § 632, only the recording or eavesdropping itself. *Hoffman v. Cenlar Agency, Inc.*, 2013 WL 1285126, at *3 (S.D. Cal. Mar. 27, 2013) ("An actionable violation of section 632 occurs the moment the surreptitious recording is made, whether it is disclosed or not") (quoting *Lieberman v. KCOP Television, Inc.*, 110 Cal.App.4th 156, 166 (2003)).

Here, Plaintiffs fail to allege facts that rebut the presumption that their internet conversations do not give rise to an expectation of "confidentiality." *See Hard Rock Café*, 2025 WL 1635419, at *5-6 (disclosure of hotel "guest records" to Meta did not rebut the presumption, which included address, telephone number, email address, and zip code); *Revitch,* 2019 WL 5485330 at *3 (similar). To the contrary, the information allegedly disclosed consisted of information reasonable persons would expect Away to record. See Compl. Fig. 7. If one orders a product online, it is expected that the merchant will share one's address, name, email, and phone number with a carrier, *e.g.*, USPS, to coordinate delivery. This requires the "recording" of such information. A reasonable person would similarly expect Away to contact their bank to process their payment, the contents of which they would have "no legitimate 'expectation of privacy' in[.]" *United States v. Miller*, 425 U.S. 435, 442 (1976) (no reasonable expectation of privacy in content of checks shared with a bank); *Smith v. Maryland*, 442 U.S. 735, 742–43 (1979) ("Telephone users, in sum, typically know that they must convey numerical information to the phone company; that the phone company has facilities for recording this information; and that the phone company does in fact record this information for a variety of legitimate business purposes . . . it is too much to believe that telephone subscribers . . . harbor any general expectation that the numbers they dial will remain secret.").[7] In other words, no reasonable person would expect the information provided to

[7] *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024) found certain (unhashed)

Away to not be "recorded" (*Flanagan*, 27 Cal.4th 776-77) given it necessarily would be communicated to third parties. *Chevron Corp. v. Donziger*, 2013 WL 4536808, at *10 (N.D. Cal. Aug. 22, 2013) ("[T]he Court must conclude that the Doe movants have no privacy interest in the subscriber information, IP addresses, and IP logs associated with their email accounts because 'a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.'"); *Patrick Collins, Inc. v. Doe*, 2012 WL 12883208, at *1 (S.D. Cal. Nov. 14, 2012) (similar). Further, as discussed, the information disclosed is not even the alleged confidential information, but an obfuscated value generated by a stepwise process. Accordingly, Plaintiffs' § 632 claims fail.

### G. Plaintiffs Do Not Plausibly Allege a Violation of CIPA § 638.51

#### 1. Pen Registers Do Not Collect the Contents of Communications

Plaintiffs' own allegations establish that the technologies at issue do not fall within the definition of a "pen register" in § 638.51. In their Complaint, Plaintiffs allege the "Tracking Technologies collect both contents and recording information relating to Plaintiffs' . . . electronic communications[.]" Compl. ¶ 223. As both state and federal courts in California have made clear, the statutory definition of a "pen register" under CIPA's plain text is a device that collects information about a communication, "but not the contents of a communication." CIPA § 638.50; *Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, at *5 (N.D. Cal Aug. 6, 2025); see also *Price v. Headspace, Inc.*, 2025 WL 1237977, at *3 (Cal. Super. Ct. Apr. 01, 2025) ("[pen registers] are designed to capture information about the communication, but not the content of the communication itself" (emphasis in original)). In other words, "if [content] is collected, the statute ceases to apply." Mitchener, 2025 WL 2272413, at *5; see also *In re Apple Data Priv. Litig.*, 2026 WL 146025 at *4–5 (finding plaintiffs' claims that contents were intercepted could not coexist with a cause of action under § 638.51).

The interplay between the wiretapping and pen register sections of CIPA also supports this construction. In drafting CIPA, the legislature contemplated two distinct theories of liability based on if a device collects content—a wiretap under § 631—or if it does not collect content—a pen register under

financial information could be considered confidential. However, *Smith* did not consider that financial information in connection with a purchase is intended to be shared and is not "confidential" as that term is understood under CIPA § 632, which requires that one "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Revitch*, 2019 WL 5485330, at *3.

§ 638.51. To read § 638.51 to apply to "devices" that collect contents would impermissibly render the language "but not the content" as "mere surplusage" in the statutory text. *Bowe v. United States*, 146 S. Ct. 447, 464 (2026) (refusing to adopt a construction of a statute where another provision would necessarily become superfluous). Accordingly, Plaintiffs' § 638.51 claim should be dismissed.

**2. The Alleged Conduct Does Not Map Onto the Operation of a Pen Register**

This Court has the "fundamental task [] to ascertain legislative intent." *Sanchez v. Cars.com*, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025). The legislative intent underlying CIPA is clear: "pen registers" collect record information about *who* a person (here, Plaintiffs) is communicating with. CIPA § 638.50 (defining a pen register as "a device or process that records or decodes dialing, routing, addressing, or signaling information"); Bill Analysis, Assemb. B. 929, Reg. Sess., at S, T–U (Cal. July 8, 2015) ("638.51 Analysis"), https://tinyurl.com/39jcb5np ("a 'pen register' … allows law enforcement officers to record all outgoing numbers from a particular telephone line"). In context, this means a "pen register" placed on Plaintiffs' computers would *only* capture record information about who Plaintiffs were communicating with, i.e. the Website. Steinberg Decl., Ex. M, *Camacho v. DG Premium Brands LLC*, No. 24STCV21672, at 3-4 (Cal. Super. Ct. Apr. 17, 2025) (hereafter, "*Camacho*") (dismissing § 638.51 claim where defendants allegedly sought to identify "[p]laintiff's IP address and other undefined 'personal information,'" rather than who they were communicating with).

Plaintiffs here suggest the opposite, that the technologies at issue are pen registers because they collect Plaintiffs' "IP address[es], Device Metadata, and unique user IDs[,]" misinterpreting the statute. Compl. ¶ 219. The "dialing, routing, addressing, or signaling" information described in CIPA § 638.50(b) refers to *who* someone is addressing in an outgoing communication. In context, this would mean a pen register placed on Plaintiffs' devices would record who Plaintiffs are communicating *with*, and by definition would not include Plaintiffs' own addressing or routing information. *See* CIPA § 638.50(b); Steinberg Decl., Ex. M, *Camacho*, at 3-4 (dismissing § 638.51 claim where defendants allegedly sought to identify "[p]laintiff's IP address and other undefined 'personal information,'" rather than who they were communicating with); Steinberg Decl., Ex. N, *Casillas v. Zappos*, No. 24STCV14880, at *3 (Cal. Super. Ct. Nov. 18, 2025) (holding technologies were not pen registers because they allegedly disclosed information about a "device, not information about communications to

or from the device, which is required for to constitute a pen register or trap and trace device."); *see also* 638.51 Analysis, at T–U. The technologies at issue here are therefore not pen registers.

Plaintiffs do not allege that the technologies here are trap and trace devices. To the extent Plaintiffs' claims are read to suggest the technologies constitute trap and trace devices, that is also incorrect. Trap and trace devices only collect record information about "incoming" communications—*i.e.*, what third parties are contacting Plaintiffs. CIPA § 638.50(c); 638.51 Analysis at T–U ("a 'trap and trace device' allows them to record what numbers have called a specific telephone line"); *see also Palacios v. Fandom, Inc.*, 2024 WL 5494527, at *3 (Cal. Super. Ct. Sep. 24, 2024). The information allegedly captured here at most identifies information sent by Plaintiffs to third parties—not from third parties to Plaintiffs. The technologies at play therefore are not trap and trace devices.[8]

### 3. The Definition of a Pen Register Does Not Reach Downstream Misuse

Next, Plaintiffs' claims fail because they mistakenly rely on an atextual "downstream" theory of liability. *See* Compl. ¶ 222. Plaintiffs' allegations involve a host of third parties working in tandem, downstream from the incipient collection of information, to de-anonymize an individual using allegedly intercepted information. *See id.* This serpentine theory further displays the inapplicability of CIPA's text to the alleged misconduct. California courts have explained that any "downstream use[]" of data is not "part of the definitions of pen registers or trap and trace devices." *Aviles v. LiveRamp, Inc.*, 2025 WL 487196, at *3 (Cal. Super. Ct. Jan. 28, 2025); *see also Van Buren v. United States*, 593 U.S. 374, 396 (2021) (finding on a textual reading of the Computer Fraud and Abuse Act ("CFAA"), downstream misuse of data is not actionable under the statute); *see also Hannant v. Culbertson,* 2025 WL 2413894, at *7 (C.D. Ill. Aug. 20, 2025) (finding that, in the internet tracking context, downstream misuse of collected data is not actionable under the CFAA).

The section of CIPA providing for a private right of action further supports Defendant's argument. CIPA section 637.2 provides that a person who has been injured "by a violation of this

[8] Even if one were to consider Plaintiffs' claim through the lens of all visits to the Away Website, this too would not establish Away operated or installed a pen register or trap and trace device, given it would suggest Away was the alleged privacy victim, not Plaintiffs. Moreover, Plaintiffs would be claiming Away was harmed by surveilling its *own* communications, notwithstanding that the case law has rejected the notion that a party can improperly surveil itself. Steinberg Decl., Ex. M, *Camacho*, at 3 ("The statute does not prohibit a defendant from collecting identifying information about who the defendant is communicating with[.]").

chapter" may bring an action "against the person who committed the violation." Plaintiffs' purported injury is not by a violation of CIPA (*i.e.*, by use of a pen register), but rather it is by downstream third parties' alleged efforts to learn the identities of users. Moreover, in contrast to CIPA § 638.51, CIPA does expressly provide for derivative liability for defendants "who aid[], agree[] with, employ[], or conspire[]" to read the contents of a message in the context of wiretapping claims brought under § 631(a). If the legislature intended to apply such derivative liability to a § 638.51 claim, it could have done so. *Petroliam Nasional Berhad v. GoDaddy.com*, 737 F.3d 546, 551 (9th Cir. 2013) ("Congress knew how to impose [secondary] liability when it chose to do so"). Because § 638.51 does not provide for derivative liability, and mandates conduct be assessed at the point of collection, Plaintiffs' claims fail.

#### 4. Away is an Electronic Communications Service Provider Who May Use a Pen Register or Trap and Trace Device

CIPA § 638.51(b) provides a statutory exception to safeguard "provider[s] of electronic or wire communication service[s]" from liability. Defendant, as an operator of a website with which Plaintiffs communicate, falls squarely in this definition. *See* Compl. ¶ 55; *Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *4 & n.2 (Cal. Super. Ct. Sep. 9, 2024) (website directed towards sale of eyeglasses qualifies under the statutory exception due to "[t]he broad definition of 'electronic communications.'"); *Casillas v. BOP LLC*, 2025 WL 2161288, at *2 (Cal. Super. Ct. June 18, 2025) (defendant's website directed towards the sale of clothing and accessories ('www.shopbop.com') qualified as an "electronic communication service"). Because Away provides electronic or wire communication services, it follows that they can "operate, maintain, and test" the Website with a pen register. CIPA § 638.51(b)(1). Thus, to the extent the Court finds Away conduct amounted to the operation of a pen register device, they are exempt from CIPA liability as providers of electronic communication services.

### H. Plaintiffs Do Not State a Constitutional Invasion of Privacy Claim

Plaintiffs fail to state a privacy claim under the California Constitution. To do so, a plaintiff must allege facts establishing: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy[;]" and (3) "a serious invasion of privacy." *Hill v. NCAA*, 7 Cal. 4th 1, 66 (1994). Plaintiffs fail to satisfy this test, and the Court should dismiss their constitutional privacy claims.

#### 1. No Legally Protected Privacy Interest

Plaintiffs lack a legally protected privacy interest in the information to which the Complaint points. Plaintiffs suggest they have a privacy interest in (1) precluding the dissemination of confidential online communications and (2) a generic privacy interest in website interactions and in not being subject to wiretaps. Compl. ¶ 228. But for the reasons explained above, Plaintiffs' interactions with the Website are not "confidential" and Plaintiffs fail to plead facts to support their CIPA claims. Failure to plead facts to support these claims demonstrates Plaintiffs have no legally protected interest under the California Constitution. *See Williams v. What If Holdings, LLC,* 2022 WL 17869275, at *5 (N.D. Cal. Dec. 22, 2022) (dismissing both CIPA wiretapping claim and constitutional invasion of privacy claim, "[b]ecause plaintiff did not plausibly plead wiretapping, plaintiff likewise did not plausibly plead a protected privacy interest under the California Constitution.").

Further, there is no free-roaming privacy interest in internet communications. As the Ninth Circuit has explained, plaintiffs lack a privacy interest in any record information communicated to websites. *See In re Zynga*, 750 F.3d at 1108. Similarly, *Popa* held that "monitoring of [Plaintiff's] interactions with [Defendant's] website seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales[.]" 153 F.4th at 791. Therefore, to the extent Plaintiffs here allege they have a generic privacy interest in website interactions (*see* Compl. ¶ 228), such allegations do "not plausibly allege the infringement of [a] privacy interest." *Popa*, 153 F.4th at 791. Plaintiffs thus fail the first prong of the test set forth in *Hill*.

**2. Plaintiffs Lack a Reasonable Expectation of Privacy**

Plaintiffs provide a single conclusory allegation regarding their reasonable expectation of privacy, asserting they "had a reasonable expectation that their sensitive and confidential online communications, identities, and other data would remain confidential[.]" Compl. ¶ 230. But Plaintiffs here had no reasonable expectation of privacy in their interactions with the Website for three reasons.

***First***, as mentioned, Plaintiffs do not plead they relied on the banner or the contents found in Figures 1-3 of the Complaint, such that they had a reasonable expectation of privacy based on representations made to them.

***Second***, Plaintiffs also lack a reasonable expectation of privacy in information conveyed to websites as part of the internet's normal operation. *United States v. Acevedo-Lemus*, 2016 WL 4208436,

at *4 (C.D. Cal. Aug. 8, 2016) (no reasonable expectation of privacy in defendant's IP address because he routinely disclosed it to websites he visited), *aff'd*, 800 F. App'x 571 (9th Cir. 2020); *Saleh v. Nike, Inc.,* 562 F. Supp. 3d 503, 525 (C.D. Cal. Sep. 27, 2021) (similar). Therefore, Plaintiffs cannot claim they have a reasonable expectation of privacy in "the buttons, links, pages, and tabs [Plaintiff] click[ed] and view[ed]," as that information is conveyed to Away as part of the Website's operation. Compl. ¶¶ 102, 130.

***Third***, Plaintiffs have no reasonable expectation of privacy in information they provided to Away while using its Website or during checkout. As discussed above, Plaintiffs have no reasonable expectation of privacy in information they know will be shared with third parties as part of a business transaction. *Hard Rock Café*, 2025 WL 1635419, at *5; *Thomas v. Papa Johns Int'l, Inc*., 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024) ("a number of courts have found that consumers do not have a reasonable expectation of privacy over their activity [on the internet]"), *aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025); *Smith*, 442 U.S. at 743–44 (noting the Supreme Court has "consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties"). Further, Plaintiffs do not plausibly allege Away shared the content of communications with third parties, as the only information Away shared that was not "IP address[es], device information, and User-IDs" was obfuscated via hashing. Compl. ¶¶ 70, 135, 139, Fig. 8–14. As evidenced in the Complaint, this obfuscated text discloses little to no information that clearly identifies Plaintiffs. *See id.* Fig. 7. Plaintiffs cannot feasibly have a privacy interest in hashed information absent plausible allegations such information was actually un-hashed. But they do not allege any party un-hashed the information or used said un-hashed information. And even if they did plead as much, Plaintiffs also recognize they already willingly provided overlapping information to Google and Facebook. *Id*. ¶¶ 5, 8 (alleging Plaintiffs "provided Facebook and Google with [their] personally identifiable information"). Thus, Plaintiffs fail the second prong of the *Hill* test as well.

### 3. Plaintiffs Do Not Allege a Serious Invasion of Privacy

Away's alleged conduct at most constitutes "routine commercial behavior" and not a serious invasion of privacy as required under *Hill*. *See Low v. LinkedIn Corp*., 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ("[D]isclosure of personal information, including social security numbers, does not constitute

an 'egregious breach of the social norms'"); *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d at 973-74, 987-88 (disclosure of browsing histories was not highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1050, 1063 (no invasion of privacy based on disclosure of addresses, geolocation, device identifier, gender, age, time zone, and app use); *Popa*, 153 F.4th at 791 (holding disclosures made by similar internet tracking technologies did not amount to "highly offensive" disclosures). In *Fogelstrom v. Lamps Plus, Inc.*, a California appellate court found an alleged invasion of privacy amounted to "routine commercial behavior" where the conduct consisted of "obtaining plaintiff's address without his knowledge or permission, and using it to mail him coupons and other advertisements." 195 Cal. App. 4th 986, 992 (2011), as modified (June 7, 2011). The facts here are even less "serious." Plaintiffs *willingly* provided their information to Away, Compl. ¶¶ 5, 101, information that Facebook and Google appear to have already had. *Id.* ¶¶ 5, 8. The disclosure of information Plaintiffs regularly provide to third parties cannot plausibly be considered "highly offensive." *See id.* ¶¶ 5, 8, 106. Furthermore, use of information for targeted advertising alone does not create an "serious" invasion of privacy either. Fogelstrom, 195 Cal. App. 4th at 992. Plaintiffs have therefore not satisfied the third prong of the Hill test.

#### 4. No Money Damages for Invasion of Privacy Claims

Even if Plaintiffs sufficiently pled their constitutional invasion of privacy claim, to the extent Plaintiffs request money damages, the Court should dismiss the request. Compl. ¶ 214; Prayer for Relief; *Clausing v. S.F. Unified Sch. Dist.*, 221 Cal. App. 3d 1224, 1237 (1990). Courts within the Ninth Circuit agree that the California Constitution does not provide for money damages in connection with invasion of privacy claims. *E.g., Blanco v. County of Kings*, 142 F. Supp. 3d 986, 1000 (E.D. Cal. 2015) ("Clausing found that article I, section 1 does not permit a private right of action for money damages … for an alleged violation of the privacy provision[.]"). Accordingly, the Court should dismiss Plaintiffs' prayer for money damages in connection with their constitutional invasion of privacy claims.

## V. CONCLUSION

For the foregoing reasons, Away respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety pursuant to Rule 12(b)(1) for lack of standing or, in the alternative, that the Court dismiss each of Plaintiff's claims pursuant to Rule 12(b)(6).

Dated: March 20, 2026

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By: *<u>/s/ David R. Singh</u>*
DAVID R. SINGH

DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 4th Floor
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

BLAKE J. STEINBERG (*pro hac vice* pending)
blake.steinberg@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendant JRSK, INC., d/b/a AWAY